# EXHIBIT V

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| Brandi Wesley, *on behalf of herself and others similarly situated*, | Civil Action No.: 2:20-cv-00148-RJS-JCB |
| Plaintiff, | |
| v. | |
| Snap Finance LLC, | District Judge Robert J. Shelby |
| Defendant. | Magistrate Judge Jared C. Bennett |
| Snap Finance LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| Derrick Deon Jackson, Jr., a/k/a Derrick Johnson, | |
| Third-Party Defendant. | |

I, Carla A. Peak, declare as follows:

1. My name is Carla A. Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them. I am a Vice President of Legal Notification Services at KCC Class Action Services, LLC ("KCC") located at 1 McInnis Parkway, Suite 250, San Rafael, CA 94903.

2. I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3. KCC is a firm that specializes in comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center

support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. With more than 30 years of industry experience,[1] KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. Since 1984, KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets.

4.  I have personally been involved in many large and significant cases, including *In re Experian Data Breach Litigation*, No. 8:15-cv-01592 (C.D. Cal.), a national data breach class action involving over 15 million T-Mobile consumers whose information was stored on an Experian server; *In re: The Home Depot, Inc., Customer Data Security Breach Litig.*, No. 1:14-md-02583 (N.D. Ga.), a national data breach class action involving over 40 million consumers who made credit or debit card purchases in a Home Depot store; *In re: Skelaxin (Metaxalone) Antitrust Litigation*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust settlement involving both third party payors and consumers that purchased or paid for the brand and generic version of the prescription drug metaxalone; *Chambers v. Whirlpool Corporation*, No. 8:11-cv-01733 (C.D. Cal.), a national product defect case involving class members who experienced or may experience the overheating of an automatic dishwasher control board; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps the largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights

---

[1] KCC acquired Gilardi & Co. LLC in 2015. This Declaration combines the class action notice and administration experience of both firms.

in the $75 million data breach settlement; and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

5. KCC has administered notice plans in a wide range of Telephone Consumer Protection Act ("TCPA") class actions, including *Abante Rooter and Plumbing v. Alarm.com, Inc*., No. 15-cv-06314 (N.D. Cal.); *Abante Rooter and Plumbing v. Oh Insurance Agency*, No. 1:15-cv-09025 (N.D. Ill.); *Abdeljalil v. GE Capital Retail Bank*, No. 12-cv-02078 (S.D. Cal.); *Adams v. AllianceOne Receivables Management, Inc*., No. 08-cv-00248 (S.D. Cal.); *Allard v. SCI Direct, Inc. d/b/a Neptune Society*, No. 17-cv-04692 (N.D. Ill.); *Allen v. JPMorgan Chase Bank*, No. 13-cv-08285 (N.D. Ill.); *Bayat v. Bank of the West*, No. 13-cv-2376 (N.D. Cal.); *Birchmeier v. Caribbean Cruise Line, Inc*., No. 12-cv-04069 (N.D. Ill.); *Biringer v. First Family Insurance, Inc*., No. 14-cv-566 (N.D. Fla.); *Boise v. ACE American Insurance Co.*, No. 15-cv-21264, (S.D. Fla.); *Charvat v. AEP Energy*, No. 14-cv-3121 (N.D. Ill.); *Coffman v. Glide Talk, Ltd*., No. 13-cv-05190 (N.D. Ill.); *Connor v. JPMorgan*, No. 10-cv-01284 (S.D. Cal.); *Couser v. Comenity Bank*, No. 12-cv-02484 (N.D. Cal.); *Couser v. Dish One Satellite, LLC*, No. 15-cv-02218 (C.D. Cal.); *Craftwood Lumber Co. v. Interline Brands, Inc*., No. 11-cv-4462 (N.D. Ill.); *Crossley v. Joya Communications, Inc*., No. 16CH14771, (Circuit Court of Cook County, Ill.); *Cummings v. Sallie Mae, Inc*., No. 12-cv-9984 (N.D. Ill.); *Davenport v. Discover*, No. 15-cv-06052 (N.D. Ill.); *Etzkorn v. 3 Day Blinds*, No. 17-cv-02836 (E.D. Mo.); *Griffith v. ContextMedia, Inc.*, No. 16-cv-02900 (N.D. Ill.); *Grannan v. Alliant Law Group, P.C*., No. 10-cv-02803 (N.D. Cal.); *Guarisma v. Blue Cross Blue Shield of Florida*, No. 13-cv-21016 (S.D. Fla.); *Hageman v. AT&T Mobility LLC*, No. 13-cv-50 (D. Mont.); *Hetherington v. Omaha Steaks*, No. 13-cv-2152 (D. Ore.); *Horn v. iCan*

*Benefit Group LLC*, No. 17-cv-81027 (S.D. Fla.); *In re Life Time Fitness*, MDL No. 2564 (D. Minn.); *In Re Midland Credit Management, Inc. TCPA Litigation*, No. 11-md-2286 (S.D. Cal.); *In Re: Monitronics International, Inc. TCPA Litigation*, No. 13-md-2493 (N.D. W.Va.); *In re: Portfolio Recovery Associates, LLC TCPA Litigation*, No. 11-md-02295 (S.D. Cal.); *Jonsson v. USCB, Inc.*, No. 13-cv-8166 (C.D. Cal.); *Kolinek v. Walgreen Co.*, No. 13-cv-04806 (N.D. Ill.); *Lee v. Global Tel Link Corporation*, No. 15-cv-02495, (C.D. Cal.); *Lees v. Anthem Ins. Cos., Inc.*, No. 13-cv-01411 (E.D. Mo.); *Leung v. XPO Settlement*, No. 15-cv-03877 (N.D. Ill.); *Luster v. Duncan Solutions*, No. 14-cv-00112 (N.D. Ga.); *Luster v. Wells Fargo*, No. 15-cv-01058 (N.D. Ga.); *Martin v. Global Marketing Research Services, Inc.*, No. 14-cv-1290 (M.D. Fla.); *Martinez v. Medicredit, Inc.*, No. 17-cv-02809 (E.D. Mo.); *Medina v. Enhanced Recovery Company LLC d/b/a ERC*, No. 15-cv-14342 (S.D. Fla.); *Melito v. American Eagle Outfitters*, No. 14-cv-02440 (S.D.N.Y.); *Mey v. Patriot Payment Group*, No. 15-cv-00027 (N.D. W.Va.); *Newman v. AmeriCredit*, No. 11-cv-3041 (S.D. Cal.); *Olsen v. ContextLogic Inc.*, No. 2019CH06737 (Circuit Court of Cook County, Ill.); *Prater v. Medicredit, Inc.*, No. 14-cv-00159 (E.D. Mo.); *Prather v. Wells Fargo*, No. 15-cv-04231 (M.D. Ga.); *R. Fellen, Inc. v. Rehabcare Group, Inc.*, No. 14-cv-0208 (E.D. Cal.); *Reginald Moore v. Family Dollar Stores, Inc.*, No. 14-cv-01542 (E.D. Mo.); *Rinky Dink Inc. v. World Business Lenders LLC*, No. 14-cv-00268 (W.D. Wash.); *Schwyhart v. AmSher Collection Services*, No. 15-cv-01175 (N.D. Ala.); *Sherman v. Kaiser Foundation Health Plan, Inc.*, No. 13-cv-00981 (S.D. Cal.); *Shestopal v. Follett Higher Education Group Inc.*, No. 15-cv-8980 (N.D. Ill.); *Slovin v. Sunrun, Inc.*, No. 4:15-cv-05340 (N.D. Cal.); *Steinfeld v. Discover Financial Services*, No. 12-cv-01118 (N.D. Cal.); *Wannemacher v. Carrington Mortgage Servs.*, No. 12-cv-02016 (C.D. Cal.); *West v. California Service Bureau, Inc.*, No. 16-cv-03124 (N.D. Cal.); *Willis v. iHeartMedia, Inc.*, No. 2016CH02455 (Circuit Court of Cook County, Ill.).

6. In forming my opinions, I draw from my in-depth class action case experience. I have worked in the class action notification field for over 15 years. During that time, I have been involved in all aspects of the design and implementation of class action notice planning, as well as the drafting of plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

7. I have been involved in hundreds of cases, including the dissemination of notice around the globe in more than 35 languages. My c.v., attached as **Exhibit 1**, contains numerous judicial comments citing cases I have worked on, as well as articles I have written and speaking engagements where I have discussed the adequacy and design of legal notice efforts.

8. Plaintiff's counsel asked me to describe the notification process that KCC would employ in this matter, which I understand to be a proposed class action brought under the TCPA. Specifically, Plaintiff's counsel asked me to describe the process that could be used to identify the names and addresses of potential class members for which only a telephone number is available, to describe the process for determining whether a telephone number is or was assigned to a cellular telephone service, as well as the subsequent notice process.

9. According to the original class action complaint in this matter, Plaintiff seeks to certify the following class: All persons throughout the United States (1) to whom Snap Finance LLC placed, or caused to be placed, a call (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance LLC accountholder, (3) by using an automatic telephone dialing system, or an artificial or prerecorded voice, (4) from February 27, 2016 through the date of class certification.

10. Through the amended class action complaint, Plaintiff seeks to represent the following classes:

*Automatic Telephone Dialing System Class*: All persons throughout the United States (1) to whom Snap Finance LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance LLC accountholder, (3) by using InContact Max-Version 540af5c, or a dialing system characterized by 3CLogic Inc. as an "automated dialer," (4) from February 27, 2016 through the date of class certification.

*Prerecorded or Artificial Voice Class*: All persons throughout the United States (1) to whom Snap Finance LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance LLC accountholder, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) from February 27, 2016 through the date of class certification.

*Text Message Class*: All persons throughout the United States (1) to whom Snap Finance LLC delivered, or caused to be delivered, a text message, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance LLC accountholder, (3) by using MessageMedia, or a dialing system characterized by 3CLogic Inc. as an "automated dialer," (4) from February 27, 2016 through the date of class certification.

11. If one or more of the classes are certified and notice is ordered, KCC could implement the following notification process, consistent with our experience in past similar matters.

12. First, KCC would obtain the list(s) of telephone numbers from the parties that belong to potential class members.

13. I understand that Snap has compiled a list of unique telephone numbers, which were identified by Snap customers as cellular telephone numbers, by using the same hardware or software Snap used to place calls to the phone number (817) ■■■-6823.

14. I also understand that Snap has compiled a list that reflects all telephone numbers, which were identified by Snap customers as cellular telephone numbers, that Snap called using the same hardware and software Snap used to place calls to the phone number (817) ■■■-6823, that contain either a "Wrong Number" attribute or a "Wrong Number – Do Not Call" attribute.

15. If the parties' records do not adequately confirm whether particular telephone numbers were assigned to a cellular telephone service, KCC can utilize a vendor such as Pacific East to analyze the numbers to make that determination.

16. The ultimate notice list will then be de-duplicated to ensure that each unique cellular telephone number appears on the list a single time. It is my understanding that in this case it is unlikely that any additional information for likely *bona fide* class members, such as email addresses or postal addresses, will be available and provided with the cellular telephone numbers as part of the notice list. At the same time, it is my understanding that in this case Snap will have the names and addresses of the intended recipients of its calls, i.e., its current or former accountholders that it intended to reach by placing calls and delivering artificial or prerecorded voice messages to the telephone numbers at issue. After de-duplication of the telephone numbers,

the cellular telephone numbers will be sent to companies such as LexisNexis, PacificEast, or Nexxa for reverse lookup procedures. This is done in order to obtain name and address information associated with cellular telephone numbers. This approach has been utilized, approved and has been considered consistent with due process in a variety of other TCPA matters.

17. The reverse look-ups will return names and postal addresses for a percentage of the cellular telephone numbers searched. Once the first reverse look-up process is complete, a second search is performed by submitting cellular telephone numbers that did not return a result to a different company in order to obtain additional results. Depending upon those results, additional searches may be performed as well by using additional companies.

18. Using the reverse look-up methodology outlined above, KCC sent telephone number 817-███-6823 to Pacific East to see if a name and address would be returned. The current name and address returned was for a Brandi Wesley, located in Arlington, Texas. It is my understanding that Ms. Wesley is the named Plaintiff in this action and the phone number above is the cellular telephone number on which she received the calls and text messages at issue in this litigation.

19. Upon completion of the above-referenced searches, the notice list will be analyzed for completeness. Depending upon the likely reach of the direct notice effort resulting from this data work, KCC will determine whether additional notification methods such as, print publications, and/or digital media will be needed to reach at least 70% of likely class members. KCC is able to design media and publication notice campaigns that can reach a substantial percentage of U.S. adults, depending on the needs of a particular case. As a result, KCC will be able to ensure that an appropriate percentage of likely class members are provided with an opportunity to learn of this class action, should it be certified.

20. For example, targeted digital media campaigns can be performed on Facebook, where notice regarding a certified class action can be directed to Facebook users based on telephone numbers on the notice list. That is, Facebook can direct messages or advertisements to only those users with an account or profile that matches a telephone number contained on the notice list.

21. Prior to mailing, the addresses on the notice list will be checked against the National Change of Address (NCOA) database maintained by USPS; certified via the Coding Accuracy Support System (CASS); and verified through Delivery Point Validation (DPV).

22. Notices returned by USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information. For any returned mailing that does not contain an expired forwarding order with a new address indicated, further address searches may be conducted using credit and other public source databases to attempt to locate new addresses. If a new address is located, a notice will be mailed to it and the notice list will be updated.

23. The results of the mailing effort will be continuously monitored and analyzed to confirm that the results fall within expectations. If the results are less than expected, additional notification methods will be added to ensure that the notice program provides at least 70% of likely class members with an opportunity to see a notice.

24. In addition, KCC commonly establishes a dedicated website for a particular class action where class members, and likely class members, can learn about the case, the claims at issue, a defendant's defenses, and applicable deadlines. Also, the dedicated case website usually contains relevant case documents, such as the complaint and class certification order.

25. If the class is certified, the formal notice program will be designed to adhere to the guidelines set forth in the FJC Checklist. For example, the notice program will be designed to effectively reach the class and the reach percentage will be calculated by KCC experts, the notices will be designed to come to the attention of class members and will use page-layout techniques to command attention, the notice will be informative, include all required information, and be written in clear, concise, easily understood language, and class members' rights and options will be easy to act upon and not contain any unnecessary hurdles that would make responding difficult.

26. The above-described notice plan outline is consistent with notice plans in similar court-approved TCPA class actions and satisfies due process in that it is the best notice practicable under the circumstances.

27. Any notice provided in this case would advise recipients of the nature of the action, the definition of the class certified, the class claims, issues, or defenses, that a class member may enter an appearance through an attorney if the member so desires, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment on members under Rule 23(c)(3).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED at Ocean City, New Jersey, this 11th day of December, 2020.

*Carla Peak*

Carla Peak

# Exhibit 1

# CARLA PEAK

## EDUCATION

**Temple University**
B.A. Sociology, Business minor - Cum Laude

## WORK EXPERIENCE

**KCC LLC -** *Vice President, Legal Notification Services*
April 2011 – Present

**Analytics, Inc. -** *Director/Legal Notice*
March 2009–March 2011

**Hilsoft Notifications -** *Notice Manager*
January 2003–February 2009

## PRESENTATIONS AND PUBLICATIONS

• "Settlement, Notice and Claims, Objectors, Cy Pres, and Attorney's Fees" University of Michigan Law School Consumer Class Actions & Complex Litigation (736-01), Carla Peak (November 2020) • "Class Action in a Modern Digital Age" COMMITTEE TO SUPPORT THE ANTITRUST LAWS (COSAL), Carla Peak (June 2020) • "Rule 23: Recent Rule Revisions" Class Action Litigation in 2020: What You Need to Know, NEW JERSEY BAR ASSOCIATION, Carla Peak (February 2020) • "Marching to Their Own Drumbeat." What Lawyers Don't Understand About Notice and Claims Administration, AMERICAN BAR ASSOCIATION 23rd Annual National Institute on Class Actions, Carla Peak (October 2019) • "Class Action Notice and Settlement Administration" Columbia Law School Complex Litigation Challenges and Strategies in Multijurisdictional and Aggregate Litigation (L9225), Carla Peak (March 2018) • "A Winning Hand or a Flop?" After 50 Years, Are Class Actions Still Legit?, AMERICAN BAR ASSOCIATION 20th Annual National Institute on Class Actions, Carla Peak (October 2016) • Class Action Notice Requirements: Leveraging Traditional and Emerging Media to Reach Class Members, STRAFFORD, Carla Peak (April 2016) • The Ethics of Class Action Settlements, CHICAGO BAR ASSOCIATION, Class Litigation Committee, Carla Peak (June 2014) • Innovations in Notification, CHICAGO BAR ASSOCIATION, Class Litigation Committee Spring Seminar, Carla Peak, presenter (May 2012) • Ethics in Legal Notification accredited CLE Program (December 2012-November 2014) •Pitfalls of Class Action Notice and Settlement Administration accredited CLE Program (March 2014) •The Fundamentals of Settlement Administration accredited CLE Program (October 2012-August 2013) • Class Action Settlement Administration Tips & Pitfalls on the Path to Approval accredited CLE Program (October 2012) • Carla Peak and Steven Weisbrot, *How to Design Your Notice to Minimize Professional Objectors*, Class Action Lawsuit Defense: Class Action Defense News, Developments and Commentary provided by BakerHostetler (www.classactionlawsuitdefense.com) (July 20, 2012) • Legal Notice Ethics accredited CLE Program (May 2010-January 2011) • Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011) • John B. Isbister, Todd B. Hilsee & Carla A. Peak, Seven Steps to a Successful Class Action Settlement, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008)

## CERTICIATIONS

• Display & Video 360 Brand Controls, Google (2020) • Advanced Google Analytics, Google Analytics Academy (2020) • Google Analytics Individual Qualification, Google Analytics Academy (2020) • Google Analytics for Beginners, Google Analytics Academy (2020) • Power Your Media Plan with Display & Video 360, Google (2020) • Essentials for Facebook Marketing Partners for Agencies, Facebook Blueprints (2020) • Google Ads Fundamentals, Google (2019) • Digital Sales Certification, Google (2019) • IAB's Digital Fundamentals, iab (2017) • Social Media Marketing, Hootsuite (2016)