Melanie J. Vartabedian (#10148)
BALLARD SPAHR LLP
One Utah Center, Suite 800
201 South Main Street
Salt Lake City, Utah  84111-2221
Telephone: 801.531.3000
vartabedianm@ballardspahr.com

Jenny N. Perkins (*Admitted Pro Hac Vice*)
Martin C. Bryce, Jr. (*Admitted Pro Hac Vice*)
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
Telephone: 215.665.8500
perkinsj@ballardpshar.com
bryce@ballardspahr.com

*Attorneys for Defendant, Snap Finance LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BRANDI WESLEY, on behalf of herself and others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SNAP FINANCE LLC,**<br><br>**Defendant.** | **DEFENDANT SNAP FINANCE LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL**<br><br>**Case No.:  2:20-cv-00148-RJS-JCB**<br><br>Chief Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennett |
| **SNAP FINANCE LLC,**<br><br>**Third-Party Plaintiff,**<br><br>**v.**<br><br>**DERRICK DEON JACKSON, JR., A/K/A DERRICK JOHNSON,**<br>**Third-Party Defendant.** | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF FACTS ................................................................................. 2

    A.    Snap's Account Records and TCPA Compliance................................. 2

    B.    "Wrong Number" Codes Do Not Mean a Number is Actually Wrong. ................. 4

    C.    The Calls to (817) XXX-6823. ........................................................... 6

    D.    Plaintiff Fails to Identify a Single Other Class Member and Her Proposed "Notice" Plan is Critically Flawed ........................................................... 9

III.   ARGUMENT ..................................................................................................... 10

    A.    Plaintiff Failed To Present Evidence to Prove the Elements of Rule 23. ............. 10

        1.    Plaintiff Has Failed to Establish Numerosity............................................ 13

        2.    Plaintiff Has Failed to Establish Typicality. ............................................ 14

        3.    Plaintiff Has Failed to Establish Commonality or that Common Questions Predominate. ........................................................... 15

    B.    Plaintiff Is Subject to a Unique Defense and, Therefore, Cannot Satisfy the Typicality and Adequate Representation Requirements for this Additional Reason. ........................................................... 22

    C.    A Class Action is not a Superior or Manageable Way to Proceed. ...................... 24

    D.    Ascertainability is Not Shown by Plaintiff. ........................................................ 24

IV.   CONCLUSION.................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abraham v. WPX Prod. Prods., LLC,*
  317 F.R.D. 169 (D.N.M. 2016)........................................................................25

*Alpha Tech Pet, Inc. v. Lagasse, LLC,*
  No. 16 C 513, 2017 U.S. Dist. LEXIS 182499 (N.D. Ill. Nov. 3, 2017)................................24

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997)........................................................................15

*Banks v. Cent. Refrigerated Servs. Inc.,*
  No. 2:16-cv-356-DAK, 2017 U.S. Dist. LEXIS 67423 (D. Utah May 2, 2017) ..............24, 25

*Davis v. AT&T Corp.,*
  No. 15-cv-2342, 2017 U.S. Dist. LEXIS 46611 (S.D. Cal. Mar. 28, 2017) ........................5, 18

*Donaca v. Dish Network, LLC,*
  303 F.R.D. 390 (D. Colo. 2014) ........................................................................13, 15

*Garcia v. Credit One Bank, N.A.,*
  No. 2:18-cv-191, 2020 U.S. Dist. LEXIS 136881 (D. Nev. July 31, 2020) ..........................23

*Gentry v. Kostecki,*
  No. 20-cv-01284, 2021 U.S. Dist. LEXIS 72546 (D. Colo. Apr. 14, 2021)...........................25

*Harper v. C.R. Eng., Inc.,*
  746 F. App'x 712 (10th Cir. 2018) ........................................................................10

*Hunter v. Time Warner Cable Inc.*
  No. 15-CV-6445, 2019 U.S. Dist. LEXIS 137495 (S.D.N.Y. Aug. 14, 2019)........................18

*In re Hydrogen Peroxide Antitrust Litig.,*
  552 F.3d 305 (3d Cir. 2008)........................................................................21

*Jacobs v. Quicken Loans, Inc.,*
  No. 15 Civ. 81386, 2017 U.S. Dist. LEXIS 176469 (S.D. Fla. Oct. 19, 2017) ......................18

*Karhu v. Vital Pharms., Inc.,*
  621 Fed. Appx. 945 (11th Cir. 2015)........................................................................13

*Lawrence v. First Fin. Inv. Fund V, LLC*,
    336 F.R.D. 366 (D. Utah 2020) ........................................................24

*Leyse v. Lifetime Entm't Servs., LLC*,
    679 Fed. Appx. 44 (2d Cir. 2017) .....................................................13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...........................................................................22

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012)........................................................13, 25

*Menocal v. GEO Group, Inc.*,
    882 F.3d 905 (10th Cir. 2018) ...........................................................15

*Morgan v. Orlando Health, Inc.*,
    No. 6:17-cv-1972, 2019 U.S. Dist. LEXIS 223912 (M.D. Fla. Oct. 23, 2019)................13, 18

*Payne v. Tri-State Careflight*,
    332 F.R.D. 611 (D.N.M. 2019) *petition for cert. denied*, No. 19-702, 2019
    U.S. App. LEXIS 392444 (10th Cir. Dec. 3, 1019)...............................20

*Reed v. Bowen*,
    849 F.2d 1307 (10th Cir. 1988) .........................................................21

*Revitch v. Citibank, N.A.*,
    No. C 17-06907-WHA, 2019 U.S. Dist. LEXIS 72026 (C.D. Cal. Apr. 28,
    2019) ....................................................................................18, 19, 21

*Rex v. Owens*,
    585 F.2d 432 (10th Cir. 1978) ...........................................................13

*Roberts v. Medco Health Solutions, Inc.*,
    No. 4:15-cv-1368, 2016 U.S. Dist. LEXIS 97177 (E.D. Mo. July 26, 2016).........................16

*S.G. v. Jordan Sch. Dist.*,
    No. 2:17-CV-00677, 2018 U.S. Dist. LEXIS 174459 (D. Utah Oct. 9, 2018) ......10, 14, 15, 24

*Sandoe v. Bos. Sci. Corp.*,
    333 F.R.D. 4 (D. Mass. 2019)......................................................17, 18

*Selby v. LVNV Funding, LLC*,
    2016 U.S. Dist. LEXIS 83940 (S.D. Cal. June 22, 2016).....................18

*Shamblin v. Obama for Am.*,
    No. 13 Civ. 2428, 2015 U.S. Dist. LEXIS 54849 (M.D. Fla. Apr. 27, 2015) .........................18

*Shook v. El Paso County*,
   386 F.3d 963 (10th Cir. 2004) ..................................................................................10

*Sliwa v. Bright House Networks, LLC*,
   333 F.R.D. 255 (M.D. Fla. 2019).........................................................5, 12, 16, 18

*Southwell v. Mortg. Inv'rs Corp. of Ohio*,
   No. C13-1289, 2014 U.S. Dist. LEXIS 112362 (W.D. Wash. Aug. 12, 2014) ......14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..............................................................................................22

*DG ex rel. Stricklin v. Devaughn*,
   594 F.3d 1188 (10th Cir. 2010) ................................................................................14

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)..................................................................................................22

*Tomeo v. Citigroup, Inc.*,
   No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117 (N.D. Ill. Sep. 27, 2018)........18, 19

*Trevizo v. Adams*,
   455 F.3d 1155 (10th Cir. 2006) ................................................................................13

*True Health Chiropractic, Inc. v. McKesson Corporation*,
   896 F.3d 923 (9th Cir. 2018) ....................................................................................20

*Ung v. Universal Acceptance Corp.*,
   319 F.R.D. 537 (D. Minn. 2017)...............................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...................................................................................1, 10, 14, 15

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
   725 F.3d 1213 (10th Cir. 2013) ..................................................................................1

*Wendell H. Stone Co., Inc. v. Five Star Advert., LLC*,
   No. 19-cv-03157, 2021 U.S. Dist. LEXIS 50721 (D. Colo. Mar. 17, 2021) ...........25

*Wilson Home Furniture v. Badcock*
   329 F.R.D. 454 (M.D. Fla. 2018)..................................................................17, 18, 19

*Ybarra v. Dish Network, LLC*,
   807 F.3d 635 (5th Cir. 2015) ....................................................................................16

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................ *passim*

**Constitutional Provisions**

U.S. Const. Article III ....................................................................................22, 23

## I.    <u>INTRODUCTION</u>

Ignoring her obligations under the Federal Rules and controlling precedent, Brandi Wesley ("Plaintiff") seeks to certify a purported class against Snap Finance LLC ("Snap") that she cannot affirmatively identify and which presents individualized issues incapable of class treatment.  Based on the evidence before this Court (or lack thereof), the result is a failure to meet her burden and her Motion for Class Certification must be denied.

Federal Rule of Civil Procedure 23 requires Plaintiff to go beyond mere allegations and affirmatively demonstrate that the elements necessary for certification are satisfied.  *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013). Plaintiff "must be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

Plaintiff's class is entirely predicated upon two assumptions: (1) it is possible to identify every recipient of a prerecorded message during the class period; and (2) a "wrong number" designation in Snap's system of record means just that.  Both assumptions are unsupported and are in fact false.  Snap cannot identify the recipients of prerecorded messages prior to September 1, 2019.  Snap only began using the "wrong number" designation after June 2, 2017 and even then the designation does not equate to an actual wrong number. Plaintiff argues that the existence of a class is "a reasonable assumption."  The Court may not certify a class premised upon "assumptions."

Plaintiff's failure to present evidence supporting her Motion is not a mistake – her strategy is to avoid the evidence entirely.  Snap provided a statistically significant sample of

customer phone numbers and corresponding account data within the applicable class period, which demonstrate it had consent to leave the prerecorded messages at issue notwithstanding a "wrong number" designation. Plaintiff does not address that evidence because it proves that individual analyses is necessary to evaluate each putative class member's claim. Plaintiff cannot escape what the evidence elicited to-date makes obvious: consent is core to Plaintiff's claim and class definition, thus any purported class claim cannot be resolved without an individualized review of the records associated with every related account and phone number. Class certification is thus improper.

Plaintiff cannot mask her evidentiary failure by proposing to identify similarly situated "*bona fide*" class members through a "notice" plan. This is an improper substitute for compliance with Rule 23 **before** certification, and should be rejected. The plan is also so deeply flawed that it is entirely unreliable. A complete analysis of the failures of the plan is set forth in Snap's contemporaneously filed Motion to Preclude Plaintiff's Expert (which is hereby incorporated by reference), but the fact that ***the plan does not, and cannot, reliably identify Plaintiff during the relevant time period*** conclusively demonstrates its unreliability and inadequacy. Simply stated, Plaintiff does not, and cannot, meet her burden of proving each Rule 23 element. Rather, the evidence proves an individualized analysis is necessary to determine the merits of each putative class member's claim. Accordingly, Plaintiff's Motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Snap's Account Records and TCPA Compliance.

Snap offers lease-to-own financing to consumers for the rental, and optional purchase of durable goods. *See* Ex. 1, Deposition of Preston Foster ("Foster Dep.") 9:20-22; 23:14-20.

Customers provide their telephone numbers to Snap in various ways, principally: 1) at the time of application; 2) by online update provided by the customer; or 3) through direct communication with the customer over the phone.  *See* Ex. 2, SNAP_82-83; 87-89.   In all instances, Snap informs the customer that providing a telephone number constitutes consent to be contacted through a prerecorded voice.  *Id*.

It is undisputed that Snap contacted its customers using one of two different telephone systems during the proposed class period:

- 3CLogic – from February 27, 2016 to August 31, 2019; and

- InContact —from September 1, 2019 to the present.

*See* Ex. 3, Deposition of Adam Christensen ("Christensen Dep.") 78:1-6; *accord* Ex. 4, Deposition of Jared Saucedo ("Saucedo Dep.") 39:9-12.

It is further undisputed that Snap has no way of determining whether it left a prerecorded message through 3CLogic —which equates to the first 3 years and 6 months of the proposed class period.  *See* Ex. 3, Christensen Dep. 98:23-25; 99:1-5; *see also* Mot., Dkt. 64 at 5.  There is simply no way to determine whether Snap placed calls "direct to a number assigned to a cellular telephone service" but not assigned to a current or former Snap customer, in which Snap "used an artificial or pre-recorded voice", prior to September 1, 2019, when Snap started using InContact.[1]  This is not the only failure to afflict Plaintiff's proposed class.

Snap has implemented various procedures throughout the lifecycle of a customer's lease to ensure compliance with the TCPA.   First, Snap runs the phone number provided in an

---

[1] It is unrefuted that Snap does not use an artificial voice.  *See* Ex. 3, Christensen Dep. 54:16-17.

application through two vendors and its own internal records to determine if it is a cellular phone number, which carrier provides service, and whether the number is associated with the customer providing it.  *See* Ex. 3, Christensen Dep. 92:22-25; 93:1-11.

Second, Snap agents are trained to treat any representation that they reached a wrong number – including that the called party was not the intended recipient of the call – at face value. Ex. 3, Christensen Dep. 93:13-21.  Any such number must be coded as "wrong."[2]  *Id.* at 93:14-21.  Once a number receives that designation, Snap will no longer call it because it is deleted from the system.  *See* Ex. 4, Saucedo Dep. 33:2-4.

Third, Snap uses Topbox, a very expensive, quality assurance tool that runs in the background of each call to screen for phrases such as "wrong number" and "do not call."  Ex. 3, Christensen Dep. 110:8-25; 111:1-18.  If Topbox hears such a phrase, it will notify Snap's quality assurance team, to verify the agent properly designated the number.  *Id.* at 113:21-25.

Significantly, the "wrong number" code was first used by Snap on June 2, 2017.  Ex. 3, Christensen Dep. 105:12-19.  Plaintiff's proposed methodology for identifying putative class members ignores this fact and Plaintiff does not propose an alternate method for identifying putative class members before that period.

### B.      "Wrong Number" Codes Do Not Mean a Number is Actually Wrong.

Even for the period after June 2, 2017, Plaintiff cannot identify any class that does not suffer from individualized issues.   There are numerous reasons why a "wrong number"

---

[2] Snap agents have available to them a drop-down menu that offers a list of attributes that can be applied to a telephone number, which include: "Wrong Number" and "Wrong Number-Do Not Call."  *See* Ex. 5, Ans. to Pl.'s Inter. No. 9.

designation does not actually demonstrate that Snap called a wrong number.  Indeed, a number coded as a wrong number often actually corresponds to a customer's number.  In addition to the obvious – seeking to avoid debt obligations (Ex. 3, Christen Dep. 89:14-20)[3] – such reasons include a relative or household member of the customer answered the call; a customer experienced a service interruption; a customer shares the number with a third party, or a customer is simply unable to communicate.  *See* Ex. 5, Ans. to Pl.'s Inter. No. 9; *see* Ex. 6, Expert Report of Margaret ("Daley Rpt.") ¶¶ 5; 20).  The only way to ensure that a number is indeed a "wrong number" is to review account records, call logs, call recordings, and other information from a host of systems of record and third party data aggregators to understand whether the designation is accurate.  *See*, *e.g.*, Ex. 3, Christen Dep. 94:20-25; 95:6-24; Ex. 4, Saucedo Dep. 22:7-22; 23:1-21; Ex. 6, Daley Rpt.¶¶ 76, 80-121.

In discovery, Snap provided account data for a random sample of 500 telephone numbers associated with its customers' accounts that reflect a "wrong number" designation.  *See* Ex. 7, Feb. 22, 2021 Ltr.  While Plaintiff did nothing with that data, Snap's expert, Ms. Daley, analyzed the sample and concluded that not one of the "wrong number" designations in the sample set demonstrated that Snap called a wrong number.  *See* Ex. 6, Daley Rpt.

---

[3] *See also Davis v. AT&T Corp.*, No. 15-cv-2342, 2017 U.S. Dist. LEXIS 46611, at *14 (S.D. Cal. Mar. 28, 2017) ("many customers tell callers they have reached the wrong number, though the customer's number was dialed, as a 'procrastination tool' to avoid speaking on the phone"); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 271-72 (M.D. Fla. 2019) ("[I]n the debt collection industry 'wrong number' oftentimes does not mean non-consent because many customers tell agents they have reached the wrong number, though the correct number was called, as a way to avoid further debt collection.").

Using the same "reverse lookup" approach proffered by Carla Peak, Plaintiff's expert, Ms. Daley confirmed that for 333 of 500 sample designated "wrong numbers" the number dialed returned an associated name that was the ***same name*** as the customer Snap was trying to reach and for whom Snap had consent to contact (i.e., not members of plaintiff's proposed class).  Ex. 6, Daley Rpt.¶ 89.

For 75 of the 500 sample numbers, no name was associated with the phone number, leaving 92 numbers where the name returned did not match the Snap customer who was the intended recipient.  *Id.*  Ms. Daley then manually reviewed the individual account records – including applications and agreements, account notes, call logs, and text messages – and was able to determine that many of the numbers either never received a call or were subsequently confirmed by the customer to be the correct number. Ex. 6, Daley Rpt.¶¶ 70, 95.

    **C.**    <u>**The Calls to (817) XXX-6823.**</u>

Plaintiff's experience typifies the need for individualized analysis to understand how a "wrong" number may enter into Snap's records and shows why phone indicator codes are only as reliable as the circumstances surrounding each particular situation.  On August 17, 2019, third-party defendant Derrick Deon Jackson, a/k/a Derrick Johnson ("Mr. Johnson"), entered into a rental-purchase agreement with Snap.  *See* Ex. 8, SNAP_7-14.  He provided the phone number at issue - (817) XXX-6823 (the "Number") - to Snap on his application, thereby not only representing that the Number was his, but providing consent to be contacted at the Number using a prerecorded voice message.  *See* Ex. 9, SNAP_1-2; Ex. 1, Foster Dep. 24:23-25; 25:1-8; 81:6-25.  On November 6, 2019, after Mr. Johnson failed to make a payment on his rental-purchase agreement, Snap began placing calls to the Number.  *See*, *e.g.*, Ex. 10, SNAP_3; Ex. 1, Foster

Dep. 67:1-14; Ex. 5, Ans. to Pl.'s Inter. No. 5; Ex. 11, SNAP_15.  No one ever answered the calls intended for Mr. Johnson.  *See* Ex. 11, SNAP_15; Ex. 3, Christensen Dep. 61:24-25, 62:1-5; 144:9-19; Ex. 5, Ans. to Pl.'s Inter. No. 14.  It was not until February 11, 2020 – over three months later – that Plaintiff called Snap to inform it that she was not the intended recipient of these calls.  *See* Ex. 12, Deposition of Plaintiff ("Pl. Dep.") 167; *see also* Ex. 13, Pl._27; Ex. 14, SNAP_16.  A Snap employee promptly designated the Number as "Wrong Number – Do Not Contact," (Ex. 14, SNAP_16; Ex. 3 Christensen Dep. 31:7-25) and Plaintiff never received another call from Snap.[4] Thus, prior to receiving Plaintiff's call in February of 2020 ***there was no way for Snap to know or even suspect*** that the number did not belong to its customer, Mr. Johnson, since he was the one who provided it and calls to the Number were never answered.  Plaintiff concedes this point.  *See* Ex. 12, Pl. Dep. 32:9-16.

Plaintiff's own claim is full of inaccuracies.  For example, while Plaintiff alleges to have been the sole subscriber to the Number continuously since November 2016 (Mot., Dkt. 64 at 2), the record is not so clear.  T-Mobile first associates Plaintiff with the Number on December 4, 2019 and Plaintiff had no explanation for this discrepancy.  *See* Ex. 15, TM_3-4; Ex. 12, Pl. Dep. 125:12-25; 126:1-25; 127:1-4. When Ms. Daley conducted a reverse lookup in an attempt to associate Plaintiff with the Number, the results indicated multiple users at the same time, and they last associated Plaintiff with the Number on October 17, 2017 – a full two years prior to Mr. Johnson providing the Number to Snap.  *See* Ex. 6, Daley Rpt.¶¶ 51-53.   The number of

---

[4] Plaintiff claims that she received calls after February 11, 2020 (Ex. 12, Pl. Dep. 196:15-21), but Snap's records show that the last call it placed to the Number was on February 7, 2020.  Ex. 14, SNAP_16.

prerecorded messages actually received by Plaintiff is another significant discrepancy.  Plaintiff

alleges Snap delivered at least 20 prerecorded messages to the Number (Mot., Dkt. 64 at 2), but

she produced evidence of receiving only 8 prerecorded messages.  *See* Ex. 16, Pl._3-4; Ex. 17,

Pl._28; Pl_32-38; Ex. 12, Pl. Dep. 158:1-11; 159:16-24.

      More damaging to Plaintiff's claim is that the record indicates that she invited the calls

from Snap.  Plaintiff knows full well how the TCPA works and how companies collecting debts

can be vulnerable to TCPA claims: for over the past 20 years, Plaintiff has worked in collections

or customer service.  *See* Ex. 12, Pl. Dep. 21:13-15; 25:15-18; 60:23-25; 61:1-8.  Her August

2020 resume header showcases such experience:

# Brandi Wesley

Senior Customer Account Representative with over 20 years of experience in handling both inbound
and outbound calls in customer service and collections.  Highly skilled in verbal and written
communication.  Demonstrated leadership through New Hire Training, Knowledge Management, and
Dialer Admin roles.  Top performer with multiple awards received for outstanding performance.

*See* Ex. 18, Pl.'s Resume.  Plaintiff testified she knew if a customer or third party indicates a

number dialed is a "wrong number" it receives a wrong number designation and is removed from

the system of record:

> Q.    …[A]s a collector, you were aware that once an individual informs the
> caller that he or she had a wrong number, that the number is typically put
> on a do-not-call list?
>
> A.    Yes.  We remove it, and we put it on a do-not call list.

*See* Ex. 12, Pl. Dep. at 239:18-23.  Plaintiff also knew that if calls that go to a wrong number go

unanswered the calls will continue:

> Q.    …[A]s a collector, if you did try those alternate channels of
> communication and you didn't have any luck and – would you stop calling
> the phone number that nobody answered?

> A.    If that's the only number that I was provided, I – unfortunately, I would
> have to continue, unless I'm notified otherwise ….

*See* Ex. 12, Pl. Dep. 239:9-11.   Nevertheless, she did not answer calls for over three months,

failing to inform Snap that it had the wrong number, thereby racking-up alleged TCPA

violations.[5]  While Plaintiff claims that she did not have time to notify Snap that it was calling a

wrong number, she found the time to keep a log of the calls and prerecorded messages she

received.  *See* Ex. 16, Pl._3-4.  And, when she finally notified Snap that the Number did not

belong to Mr. Johnson, she recorded the call as evidence for her lawsuit.  Ex. 12, Pl. Dep. 165-

168; Ex. 13, Pl._27.

### D.    Plaintiff Fails to Identify a Single Other Class Member and Her Proposed "Notice" Plan is Critically Flawed.

Plaintiff seeks to certify a nationwide class of people who received a prerecorded

message from Snap "to a number assigned to a cellular telephone service, but not assigned to a

current or former Snap Finance LLC accountholder" from February 27, 2016 through the date of

class certification.   Despite having the burden of demonstrating compliance with each

requirement of Rule 23, Plaintiff has not identified a single person in the proposed class and does

not propose any process using common evidence and methods of proof to either identify class

members prior to class certification or to adjudicate their individual claims on a class wide basis.

---

[5] Plaintiff's self-serving testimony that she answered calls from Snap on a few occasions is
belied by Snap's records and Plaintiff's own admission that Snap's call log does not show any
answered calls and that companies should be able to rely on the information in their call logs.
*Compare* Pl. Dep. 173:14-25; 174:1-2 *with* Snap_15; Christensen Dep. 144:1-25; 145:1-9; Ex.
12, Pl. Dep. 202:20-25; 21:1; 197:5-11.

It is axiomatic that in trying to prove that each Rule 23 requirement is satisfied, Plaintiff should identify at least one other person similarly situated to her.  But she has identified literally no one.

The only process for identifying class members that Plaintiff even half-heartedly proposes is Ms. Peak's "notice" plan.  This is no substitute for an actual plan to identify class members prior to certification, and certainly does not meet Plaintiff's burden of demonstrating compliance with Rule 23.  Neither Plaintiff nor her expert have identified a single person that meets the class definition, and they offer no opinion how to resolve the issue of consent, phone ownership or usage, or receipt of "wrong number" calls using common evidence or proof.  *See* Ex. 6, Daley Rpt., ¶¶ 44-48; Ex. 19, Peak Decl.

## III.   ARGUMENT

### A.   Plaintiff Failed To Present Evidence to Prove the Elements of Rule 23.

Plaintiff must "affirmatively demonstrate," that all of the requirements of Rule 23 are satisfied.  *Dukes*, 564 at 350-51.  "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *Harper v. C.R. Eng., Inc.*, 746 F. App'x 712, 719-20 (10th Cir. 2018) (internal citations omitted); *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) (the court must "carefully apply the requirements of Rule 23(a)") (internal citations omitted); *S.G. v. Jordan Sch. Dist.*, No. 2:17-CV-00677, 2018 U.S. Dist. LEXIS 174459, at *4-5 (D. Utah Oct. 9, 2018) (Shelby, J.) ("The district court 'has an independent obligation to conduct a rigorous analysis before concluding that Rule 23's requirements have been satisfied.'") (citation omitted).  Plaintiff must also show (1) that common questions predominate over questions that require individual proof, and (2) that a class

action is superior to other methods for fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. P. 23(b)(3).

As evidence that she established the elements of Rule 23, Plaintiff cites to the number of telephone numbers Snap placed calls to through 3CLogic.  The numbers are inconsequential because it is unrefuted that Snap cannot determine whether it delivered a prerecorded call to *any* telephone number using 3CLogic.  *See* Ex. 3, Christensen Dep. 98:23-25; 99:1-5; *see also* Mot., Dkt. 64 at 5.  Plaintiff's "reasonable assumption" that during the class period Snap delivered prerecorded messages through the 3CLogic dialer to "another 50,000 cellular telephone numbers it marked with a "wrong number" notation," is sheer guesswork.  There is simply no evidence in the record that would allow Plaintiff or anyone else to draw this conclusion.

This is not the only hurdle faced by Plaintiff.  Snap did not begin using a "wrong number" notation until June 2, 2017.  Ex. 3, Christensen Dep. 105:12-19.  As Plaintiff's proposed methodology for identifying putative class members relies entirely on such notation, Plaintiff's proposed class is untenable as she offers no alternate way for identifying putative class members from February 27, 2016 through June 1, 2017.

This leaves Plaintiff with her assertion that she can identify putative class members from September 1, 2019 through the present: namely, those 32,780 phone numbers containing "wrong party" indicators.  Notably, Plaintiff has failed to identify even a single person who received a prerecorded message as the result of a "wrong number" call.  Indeed, for 32,780 allegedly "wrong numbers," Plaintiff can do no more than "assume" that: (1) the number was actually a wrong number; (2) Snap delivered a prerecorded message to the number when it was actually a

wrong number or at all; and (3) a prerecorded message was actually received. Plaintiff's assumptions are fatally flawed.

As to Plaintiff's first assumption, Snap has demonstrated above that the "wrong number" designation cannot be utilized to identify the class. Determining whether a prerecorded message was left on a "wrong number" would require a detailed review of each file associated with that number.

As to Plaintiff's second assumption, Plaintiff only inquired whether Snap attempted to deliver a prerecorded message to a particular phone number. She did not request, and the records do not show, **when** the prerecorded message was delivered. *See* Ex. 20, SNAP_70. The records do show that Snap deletes phone numbers when a "wrong number" attribute is added and, therefore, any prerecorded message was necessarily delivered *before* the phone number was deleted. Ex. 4, Saucedo Dep. 28:16-22; 29:1-4. Consequently, a prerecorded message could have been left while a number was associated with a Snap customer and before it was reassigned to a non-customer. Plaintiff utterly fails to take this very real possibility into account.

As to Plaintiff's third assumption, the records do not depict whether a prerecorded message was actually received. There are many reasons – specific to individual cell phone users – that a voicemail message does not play, e.g., voicemail box is not set up; voicemail box was deactivated, voicemail box was full; voicemail program did not operate; or the recipient uses call-blocking technology. *Sliwa v. Bright House Networks, LLC* held that a prerecorded voice class could not be certified because "determining whether a [prerecorded voice] played would require an individual inquiry as to each … class member." 333 F.R.D. 255, 280 n.21 (M.D. Fla. 2019). Resolving this third issue would require each putative class member to self-attest, which

precludes certification of a class.  *See*, *e.g.*, *Leyse v. Lifetime Entm't Servs., LLC*, 679 Fed. Appx. 44, 47 (2d Cir. 2017) (affirming denial of class certification where the plaintiff had "proposed to identify class members by soliciting individual affidavits certifying receipt of the prerecorded call"); *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 397 (D. Colo. 2014) (denying class certification where authentication of class members would require "individual investigation and fact finding" as it is very unlikely that people who received a prerecorded call 7 years ago would have evidence of that); *Karhu v. Vital Pharms., Inc.*, 621 Fed. Appx. 945, 948 (11th Cir. 2015) (class members may not "self-identify" through affidavits); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) (same).

### 1.    Plaintiff Has Failed to Establish Numerosity.

Assumptions regarding the number of potential class members do not satisfy the ***numerosity*** requirement under Rule 23.   "[T]here must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement." *Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978). Plaintiff has failed to supply such evidence and offers only speculation that the class will be sufficiently numerous.  *See Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (affirming numerosity had not been established and noting that the Tenth Circuit has never adopted an argument that numerosity may be presumed).  Plaintiff and her expert did not analyze any of the phone numbers Snap produced to "ascertain or even estimate the number of members in the proposed class[]," or identify even a single person similarly situated to Plaintiff.  *See Morgan v. Orlando Health, Inc.*, No. 6:17-cv-1972, 2019 U.S. Dist. LEXIS 223912, at *13-14 (M.D. Fla. Oct. 23, 2019) (denying certification in TCPA case because plaintiff failed to present evidence of

actual or estimated number of class members). Plaintiff's proposed "notice" plan describing what her expert might do in the future "cannot constitute proof of the numerosity element" or overcome her complete failure to present any evidence for the Court to consider. *Southwell v. Mortg. Inv'rs Corp. of Ohio*, No. C13-1289, 2014 U.S. Dist. LEXIS 112362, at *4-5 (W.D. Wash. Aug. 12, 2014) (denying certification in TCPA case because plaintiff "failed to establish, on a preponderance of the evidence basis, the numerosity element," including through use of "notice" expert).

In *Jordan*, this Court rejected a class definition where Plaintiff failed to provide concrete evidence of numerosity: "[a]ll present and future Jordan, Canyon, and Granite school district female high school students who seek to participate and/or are or were deterred from participating in athletics," could not be certified because estimates based on averages showing poor female participation in high school athletics was a no substitute for evidence of "'*in fact* sufficiently numerous parties." 2018 U.S. Dist. LEXIS 174459, at *3, 7-10 (emphasis in original) (citing *Dukes*, 564 U.S. at 350). Similarly here, Plaintiff has only ever identified herself as a member of the class, pointed to a list of "wrong number" designations and assumes without any proof that those designations are accurate, and offers no proposal for how to determine who "in fact" constitutes a member of the class based on that list until ***after*** certification. That is not the standard articulated in Rule 23. *See id.*

### 2. Plaintiff Has Failed to Establish Typicality.

By failing to identify a single person similarly situated to her, Plaintiff also cannot meet her burden of proving ***typicality*** – or that "all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *DG ex rel.*

*Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010).  Again, Plaintiff asks the Court to

"assume" that there are other people like her who allegedly received calls, without consent, that

contained a prerecorded message (Mot., Dkt. 64 at 5), but Plaintiff has failed to identify a single

person that the Court can compare to Plaintiff to determine, for example, whether her alleged

injury is typical of the proposed class or if common questions exist on the issue of TCPA

liability.  *Donaca*, 303 F.R.D. at 396-97 (denying class certification because plaintiff was unable

to identify any individual or phone number that received a call other than the named plaintiff

himself).

**3.**     **Plaintiff Has Failed to Establish Commonality or that Common**
          **Questions Predominate.**

The proponent of class formation "must demonstrate that the proposed class members

'have suffered the same injury' that is based on a 'common contention,' *i.e.*, 'that determination

of its truth or falsity will resolve an issue that is central to the validity of each one of the claims

in one stroke.'"  *Jordan,* 2018 U.S. Dist. LEXIS 174459, at *14-15 (quoting *Dukes* 564 U.S. at

349-50).  Commonality cannot exist where individualized assessment must be made to determine

whether the claim applies.  *See id.* at *16.

This class also cannot be certified because Plaintiff cannot prove that "common"

questions of fact are "capable of class-wide resolution . . . in one stroke." *Dukes*, 564 U.S. at 350.

Predominance is a "far more demanding" requirement than Rule 23(a) commonality. *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  It is determined by "considering how the

class intends to answer factual and legal questions to prove its claim—and the extent to which

the evidence needed to do so is common or individual."  *Menocal v. GEO Group, Inc.*, 882 F.3d

905, 915 (10th Cir. 2018).

15

Plaintiff states that whether "Snap used a prerecorded voice in connection with the calls at issue is a question common to the proposed class." *Mot., Dkt. 64* at 8.  However, "[t]o be liable under the 'artificial or prerecorded' voice section of the TCPA …. a defendant must make a call and an artificial or prerecorded voice must actually play." *Ybarra v. Dish Network, LLC,* 807 F.3d 635, 640-41 (5th Cir. 2015); *see also Roberts v. Medco Health Solutions, Inc.*, No. 4:15-cv-1368, 2016 U.S. Dist. LEXIS 97177, at *5 (E.D. Mo. July 26, 2016) (holding that calls made to a plaintiff who used a call-blocking app that prevented the phone from ringing or going to voicemail were not actionable because a "call in which a prerecorded voice might, but does not play, does not trigger violation of the TCPA").  Accordingly, a call-by-call inquiry is required because there are many reasons a prerecorded message will <u>not</u> play, *e.g.*, voicemail box is not set up; voicemail box was deactivated, voicemail box was full; voicemail program did not operate; or the recipient uses call-blocking technology.  If a voicemail message was supposed to play—but did not—the recipient could not be a class member and there would be no TCPA violation.  It is precisely for these reasons that the court in *Sliwa* declined to certify a prerecorded voice class, as "determining whether a [prerecorded voice] played would require an individual inquiry as to each … class member." *Sliwa*, 333 F.R.D. at 280 n.21.  The court rejected the argument that a prerecorded voice "should have played" because "whether a [prerecorded voice] should have played does not establish that it did in fact play." *Id*.

Plaintiff's own experience exemplifies this individualized issue.  While Plaintiff claims Snap delivered "at least" 20 prerecorded messages to the Number, she only offers proof that she received 8 of them. *See supra* at p. 8.  Snap has no way of determining from its records whether a prerecorded message it attempted to deliver actually played.  Rather, this information, to the

extent it still exists, is in the possession of each call recipient. Putative class members would have to prove that they each received a prerecorded message that played during the proposed class period. Such self-serving attestations are not an acceptable shortcut. *See supra* at 13.

While an affidavit certifying inclusion in a class might be appropriate in some cases where damages for an individual claimant are negligible, here Snap could face up to $1500 per call. This amount is relevant both as an incentive for individuals to improperly enter the class and … a danger that impacts due process protections for Snap. *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 458 (M.D. Fla. 2018); *see also Sandoe v. Bos. Sci. Corp.*, 333 F.R.D. 4, 9 (D. Mass. 2019). Snap would need the opportunity to cross-examine each affiant and to make arguments regarding any evidence that he or she put forward. This cannot be done on a class-wide basis.

Consent also presents an individualized issue as the only evidence before the Court—from Snap—demonstrates that examination of whether the subscriber or customary user of a cellular number Snap marked as a "wrong number" actually consented is necessary for each individual proposed class member, making each claim atypical and defeating commonality as well as predominance. Here, Snap has shown that a "wrong number" designation does not, in fact, indicate that the number dialed did not belong to a Snap customer at the time it was dialed. *See* Ex. 6, Daley Report. ¶¶ 111-121 (finding a vast majority of "wrong number" notations actually resulted in contact with a Snap customer or authorized user). Consent analysis is crucial, as there can be no TCPA liability where an individual consented to receive prerecorded messages at a telephone number they provided.

Courts overwhelmingly deny certification in TCPA "wrong number" cases when the evidence shows that resolving the issue of consent as to putative class members requires individualized proof. *See Revitch v. Citibank, N.A*., No. C 17-06907-WHA, 2019 U.S. Dist. LEXIS 72026, *12-15 (C.D. Cal. Apr. 28, 2019) (denying certification because there was no common evidence or proof to resolve claims on a class wide basis since evidence presented by defendant demonstrated that resolving consent as to class members required individualized inquiry); *Tomeo v. Citigroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, *15 (N.D. Ill. Sep. 27, 2018) (denying certification because evidence proved that resolving consent required individualized analyses of each class member's specific circumstances).[6]

---

[6] *See also Sandoe*, 333 F.R.D. 4 (declining to certify a wrong number class where proponent had not satisfied typicality or adequacy requirements); *Morgan*, 2019 U.S. Dist. LEXIS 223912, at *29 (recommending to decline to certify a wrong number class where defendant demonstrated a manual review of the call data would be necessary to determine whether those calls coded as wrong numbers were actually wrong numbers); *Sliwa*, 333 F.R.D. at 271-72 (declining to certify wrong number class and noting "wrong number" call log designations could not define a class as "in the debt collection industry 'wrong number' oftentimes does not mean non-consent because many customers tell agents they have reached the wrong number, though the correct number was called, as a way to avoid further debt collection) (internal citations omitted); *Hunter v. Time Warner Cable Inc.*, No. 15-CV-6445, 2019 U.S. Dist. LEXIS 137495, at *44 (S.D.N.Y. Aug. 14, 2019) (declining to certify "wrong number" class because evidence demonstrated "issues of individualized consent would predominate at trial"); *Wilson*, 329 F.R.D. at 460 (declining to certify a "wrong number" class because the individualized issue of consent "dwarf[s] the much simpler question of whether [d]efendant called a given class member with a prohibited system"); *Davis*, 2017 U.S. Dist. LEXIS at *14-16 ("'wrong number' notations would not absolutely resolve" issue of consent since evidence showed "call with a 'wrong number' notation proves nothing" without individualized inquiries of each call); *Selby v. LVNV Funding, LLC*, 2016 U.S. Dist. LEXIS 83940, at *31-36 (S.D. Cal. June 22, 2016) (evidence demonstrated that class members provided consent); *see also Jacobs v. Quicken Loans, Inc.*, No. 15 Civ. 81386, 2017 U.S. Dist. LEXIS 176469, at *5-9 (S.D. Fla. Oct. 19, 2017); *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 541 (D. Minn. 2017); *Shamblin v. Obama for Am.*, No. 13 Civ. 2428, 2015 U.S. Dist. LEXIS 54849, at *28-31 (M.D. Fla. Apr. 27, 2015).

As in *Revitch* and *Tomeo*, Snap has presented evidence that resolving consent with respect to a specific phone number involves a highly fact-intensive individualized review of account records. *Revitch*, 2019 U.S. Dist. LEXIS 72026 at *12-13, and *Tomeo*, 2018 U.S. Dist. LEXIS 166117 at *29.[7]  The evidence demonstrates that Snap only calls numbers provided by its customers, and the numbers are obtained by various methods, including, as in Plaintiff's individual situation, from an application.  *See* Ex. 2, SNAP_82-83; 87-89.  In assessing the propriety of certifying a "wrong number" class, the "determinative—and most complex, fact-specific—aspect" of the inquiry is "how the number entered [Snap's] records and, related, the issue of consent." *Wilson*, 329 F.R.D. at 459.  Because this "inquiry is likely to dwarf the much simpler question of whether [d]efendant called a given class member," with a prerecorded message, predominance cannot be met and class certification must be denied. *Id.* at 460.

Plaintiff contends the Court should ignore consent when deciding the Motion.  Plaintiff states, without offering any proof, that "individualized issues of prior express consent that may exist in some TCPA cases do not exist here [as] members of the proposed class are ***unintended recipients*** of Snap's prerecorded voice messages, who necessarily did not provide Snap with prior express consent."  Mot., Dkt. 64 at 13 (emphasis added).  That statement is wholly belied by the evidence in this case.  Indeed, the only sample analysis done in this matter showed that virtually all members of Plaintiff's proposed class were indeed the intended recipients of Snap's communications.  *See* Ex. 6, Daly Rpt. They were Snap's customers, or authorized users, who

---

[7] All of the cases Plaintiff cites to support her "wrong number" class predate *Revitch* and *Tomeo*.

had provided consent to be contacted with prerecorded messages at the time they provided the phone number that eventually received a "wrong number" designation.  *Id*.

The Court must assess the impact of Snap's consent-defeating evidence on Plaintiff's ability to prove compliance with the predominance requirement.  *See, e.g.*, *Payne v. Tri-State Careflight*, 332 F.R.D. 611, 690-94, 702 (D.N.M. 2019) (denying certification where Defendants' liability on the class claim required the Court to proceed "proposed class member by proposed class member.") *petition for cert. denied*, No. 19-702, 2019 U.S. App. LEXIS 39244 at *2 (10th Cir. Dec. 3, 1019) (affirming that the proposed class did not satisfy Rule 23 because the class definition required individualized determinations).  Thus, while Plaintiff has the burden of proving the proposed class meets the "predominance requirement," Snap's "burden of proving consent [under the TCPA] strongly affects the analysis" and a "predominance-defeating consent defense [can be presented] in a variety of ways."  *True Health Chiropractic, Inc. v. McKesson Corporation*, 896 F.3d 923, 931-32 (9th Cir. 2018) (denying certification in TCPA case because defendant presented evidence of individualized consent defenses to certain claims).

Plaintiff attempts to overcome these hurdles by relying upon her expert and the notice plan.  Ms. Peak proposes sending notice after certification to persons associated with the phone numbers in Snap's records that have a "wrong number" indicator code and Plaintiff proposes identifying current or former Snap accountholders by reviewing Snap's records after certification Mot., Dkt. 64 at 7.  The evidence presented by Snap demonstrates the need for individually analyzing each account record because the indicator codes do not accurately identify calls to non-customers without consent, and that Snap has viable defenses of consent based on that evidence.  Ex. 6, Daley Rpt. ¶¶ 111-120.  Plaintiff cannot rebut this evidence because neither she

nor Ms. Peak reviewed Snaps records.   Plaintiff faces the same problem that thwarted certification in *Revitch*:   "adjudicating the claims of those who do fall within [P]laintiff's proposed class would devolve into the tedious resolution of individualized issues based on individualized evidence." 2019 U.S. Dist. LEXIS 72026, *14.   Plaintiff has not proposed any process to address consent on a class-wide basis, or at all.   Indeed, the only analysis Ms. Peak performed in this case was a simple search of a single phone number that failed to definitively identify even the class representative in this case during the time period she allegedly received calls.   Ex. 19, Peak Decl. ¶ 18; Ex. 6, Daley Rpt. ¶¶ 49-56.   Thus, the Motion must be denied.

In short, and at best, Plaintiff and her expert ask this Court to improperly conditionally certify a class.   *See, e.g., Advisory Committee Note to 2003 Amendment to Fed. R. Civ. P. 23* ("The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met.); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) ("courts should not grant certification except after searching inquiry, and . . . should not rely on later developments to determine whether certification is appropriate." (internal citations omitted). As this Circuit stated: "courts are not obligated to certify classes on the basis of logical assumptions. It is neither practical nor prudential to engage the powerful machinery of a class action on the basis of a hypothetical. Crucial factors, such as economies of time, money, judicial resources, and the avoidance of multiple litigation, can remain wholly unsatisfied when certification occurs based on guesswork." *Reed v. Bowen*, 849 F.2d 1307, 1311 (10th Cir. 1988).

The elements of Rule 23 must be proven before class certification, not after.  That proof does not exist here, and Plaintiff's expert cannot mask that failure.  Accordingly, certification is improper and the Motion should be denied.

**B.** **Plaintiff Is Subject to a Unique Defense and, Therefore, Cannot Satisfy the Typicality and Adequate Representation Requirements for this Additional Reason.**

Plaintiff lacks Article III standing – a defense to Plaintiff's individual claim that is highly atypical of the proposed class claim.  Article III defines and limits the jurisdiction of federal courts by requiring "federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotations and emphasis omitted).  As emphasized by the Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), an alleged harm must be "concrete and particularized" to provide Article III standing.  Standing requires a three-part showing: that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547.

Plaintiff must establish "a causal connection between the injury" and the defendant's complained-of conduct. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-562 (1992).  Plaintiff cannot demonstrate that any "concrete and particularized" injury was caused by calls placed to her because Plaintiff has conceded that she knew of the TCPA prior to ever receiving calls from Snap, that she knew how to request Snap to stop calling her in error, and yet she never answered a call from Snap.  She did not inform Snap that it was calling a wrong number until the calls to the Number stopped in February 2020.  This despite that Plaintiff knew from over two decades

of working in the collection industry, and receiving training on the TCPA, that a request to stop calls would be immediately honored.

On this record, where it is clear that Plaintiff knew of the TCPA yet did nothing to stop unwanted calls to the Number, Plaintiff lacks standing to proceed in asserting what is essentially a privacy-based tort. The TCPA was not designed so that a debt collector, knowing how to manipulate companies into calling her with collections calls (by allowing unwanted calls intended for another to roll in), could have a second career as a TCPA plaintiff. Under a similar set of facts as those present here, a Court granted a defendant-creditor's summary judgment motion against a plaintiff-debt collector for lack of Article III and prudential standing. *See Garcia v. Credit One Bank, N.A.*, No. 2:18-cv-191, 2020 U.S. Dist. LEXIS 136881, at *7-8 (D. Nev. July 31, 2020). The Court held that the plaintiff's experience as a debt collector made him familiar with "the mechanics of a TCPA claim" and plaintiff's admitted knowledge that Credit One would have stopped calling him had he instructed the same, meant that he had not suffered an injury-in-fact. The Court reasoned, "[i]nstead of taking the steps necessary to stop the alleged injury (the unwanted calls), he took steps to allow the continuance of the injury while building a record to facilitate a later claim." *Id.* at *8. *Garcia* is on all fours here. Plaintiff testified that she knew creditors stop calling numbers when they are informed it is a wrong number and that a creditor has no way of detecting same, when the phone number is provided in a customer's application and all calls to that number are unanswered.

Plaintiff's lack of standing also shows that she cannot meet the ***fair and adequate representation*** requirement of Rule 23. "Adequacy ensures the named plaintiff and class counsel, based on individual characteristics, are capable of representing the class without

impediments."  *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 376 (D. Utah 2020)

(Shelby J.).  Significantly, the representative "must not have interests antagonistic to the interests

of other class members."  *Jordan*, 2018 U.S. Dist. LEXIS 174459, at *5 (internal citations

omitted).  As Plaintiff invited the communication from Snap to further her ambitions of being a

TCPA plaintiff, her interests cannot align with those of the class, and certification should be

denied.

### C.      <u>A Class Action is not a Superior or Manageable Way to Proceed</u>.

Plaintiff's proposed class action is not a superior or manageable way to proceed, as

required by Rule 23(b).  Plaintiff has posited no method, based on class wide proof, to identify

even a single similarly situated person.  The suggestion that manageability is not an issue

because Snap has "documents identifying the cellular telephone number" and the number of pre-

recorded messages along with "the names and address of individuals associated with the cellular

telephone number" (Mot., Dkt. 64 at 17), is demonstrably false.  The evidence and analysis in

this case—including an analysis of Snap's records—clearly demonstrate that "individualized

consent issues would require a series of mini-trials, thus defeating predominance and

superiority."  *Alpha Tech Pet, Inc. v. Lagasse, LLC*, No. 16 C 513, 2017 U.S. Dist. LEXIS

182499, at *2222 (N.D. Ill. Nov. 3, 2017).

### D.      <u>Ascertainability is Not Shown by Plaintiff</u>.

Plaintiff contends there is no requirement that in the Tenth Circuit that she demonstrate

ascertainability (Mot., Dkt. 64 at 18) (citing *Banks v. Cent. Refrigerated Servs. Inc.*, No. 2:16-cv-

356-DAK, 2017 U.S. Dist. LEXIS 67423 at *13-14 (D. Utah May 2, 2017). Yet, she fails to

mention that "the majority of district courts in the Tenth Circuit appear to apply the Third

24

Circuit's more stringent standard for ascertainability." *Banks*, 2017 U.S. Dist. LEXIS 67423 at *14 (internal citations omitted); *accord Gentry v. Kostecki*, No. 20-cv-01284, 2021 U.S. Dist. LEXIS 72546, at *8 (D. Colo. Apr. 14, 2021). "[T]o satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible." *Wendell H. Stone Co., Inc. v. Five Star Advert., LLC*, No. 19-cv-03157, 2021 U.S. Dist. LEXIS 50721, at *9 (D. Colo. Mar. 17, 2021) (internal citations omitted).

Under the Third Circuit's ascertainability standard, adopted by numerous courts in this Circuit, a class cannot be certified unless it is "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 592-593. "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.*

Here, because for each proposed class member an extensive individualized inquiry must be performed to determine whether they consented to be contacted at the phone number provided to Snap and whether a prerecorded message actually played defeats the ascertainability requirement. *See Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 254-55 (D.N.M. 2016) (denying a class was ascertainable where proponents failed to present "sufficient evidence identifying which class members fit" the definition). Accordingly, the Motion should be denied.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Snap Finance LLC respectfully requests that the Court deny Plaintiff's Motion for Class Certification.

Dated this 14th day of May 2021.        Respectfully submitted by,


/s/ *Jenny N. Perkins*
Melanie J. Vartabedian
Jenny N. Perkins (*admitted pro hac vice*)
Martin C. Bryce (*admitted pro hac vice*)
BALLARD SPAHR LLP
*Attorneys for Defendant, Snap Finance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct of copy of the foregoing **DEFENDANT'S BRIEF**

**IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND**

**APPOINTMENT OF CLASS COUNSEL** was served to the following this 14th day of May

2021, in the manners set forth below:

On Plaintiff Brandi Wesley:

[X] Electronic Filing

> Aaron D. Radbil
> Alexander D. Kruzyk (*admitted pro hac vice*)
> Michael L. Greenwald (*admitted pro hac vice*)
> GREENWALD DAVIDSON RADBIL PLLC
> 401 Congress Avenue, 1540
> Austin, TX 78701
>
> Curtis R. Hussey
> HUSSEY LAW FIRM, LLC
> 82 Plantation Pointe Road #288
> Fairhope, AL 36532
>
> Jason E. Greene
> Jared D. Scott
> ANDERSON & KARRENBERG, P.C.
> 50 West Broadway, Suite 700
> Salt Lake City, UT 84101

On Third-Party Defendant Derrick Deon Jackson, Jr. a/k/a Derrick Johnson:

[X] U.S. Mail, postage prepaid

Derrick Deon Jackson, Jr. a/k/a Derrick Johnson
1600 Pecan Chase Circle, Apt. 9
Arlington, Texas 76012

> /s/ *Jenny N. Perkins*
> Jenny N. Perkins

i