IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRANDI WESLEY, *on behalf of herself and others similarly situated*,<br><br>       Plaintiff,<br><br>v.<br><br>SNAP FINANCE LLC,<br><br>       Defendant. | **MEMORANDUM DECISION AND ORDER**<br>Case No. 2:20-cv-148-RJS-JCB<br><br>Chief District Judge Robert J. Shelby<br>Magistrate Judge Jared C. Bennett |
| SNAP FINANCE LLC,<br><br>       Third-Party Plaintiff,<br><br>v.<br><br>DERRICK DEON JACKSON, JR., a/k/a DERRICK JOHNSON,<br><br>       Third-Party Defendant. | |

Plaintiff Brandi Wesley brings this action against Defendant Snap Finance, seeking class-wide relief under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227.  The TCPA prohibits placing certain calls to a number assigned to a cellular telephone service using an automatic telephone dialing system (ATDS) and/or artificial or prerecorded voice to deliver a message without consent.[1]  Before the court are two motions: (1) Snap's Motion to Exclude the Testimony of Wesley's Class Notice Expert;[2] and (2) Wesley's Motion to Certify a Class.[3]

---

[1] 47 U.S.C. § 227(b)(1)(A)(iii).

[2] Dkt. 73.

[3] Dkt. 64.

For the reasons stated below, Defendant's Motion to Exclude the Testimony of Wesley's Class Notice Expert[4] is DENIED and Plaintiff's Motion to Certify a Class[5] is GRANTED.

## Background[6]

Snap is a financial services company located in West Valley City, Utah.[7]  Wesley alleges Snap started placing calls to her cellular telephone number in November 2019.[8]  From November 6, 2019 through February 7, 2020, Wesley alleges Snap placed at least sixty calls to her cellphone number.[9]  During that time, Snap left at least eight artificial or prerecorded voice messages on Wesley's cellphone voicemail.[10]

On the occasions when Wesley answered the calls, she was greeted with an artificial or prerecorded voice message that did not allow her to connect to a live person, but rather requested that she place a return call to Snap.[11]  Similarly, one of the voicemails left on Wesley's cellphone states: "This is an important message from Snap Finance.  Please give us a call as soon as you get this message at 1-855-296-0213.  Again, this is an important message from Snap Finance. Please give us a call as soon as you get this message at 1-855-296-0213."[12]

---

[4] Dkt. 73.

[5] Dkt. 64.

[6] Because this case is before the court on a motion to certify a class, the court accepts as true all well-pleaded factual allegations contained in the Amended Complaint.  *See Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 503 (D. Kan. 2015) (accepting "the substantive allegations of the complaint as true" for a motion to certify a class) (internal quotation marks and citations omitted).

[7] Dkt. 40 ¶ 6.

[8] *Id.* ¶ 8.

[9] *Id.* ¶ 9.

[10] *Id.* ¶ 11.

[11] *Id.* ¶ 10.

[12] *Id.* ¶ 12.

When applying for financial services, Snap's customers consent to calls like those received by Wesley through Snap's Terms and Conditions for Applicants, providing in relevant part,

> By signing, you give us permission to call the landline or cell phone numbers provided by you, by automated dialer or otherwise, and to leave voice messages at the phone number listed above, disclosing the name of Snap Finance, contact information, and the nature of the call.[13]

The problem here is that Wesley is not, nor has ever been, one of Snap's customers.[14] Wesley has never had any business relationship with Snap and did not provide her cellular telephone number to Snap.[15]  Instead, Snap placed the calls to her cellular telephone number in an effort to reach a third party, not related to Wesley.[16]  When Wesley returned one of Snap's calls, a Snap representative informed her that "it looks like we might have your phone number for somebody else's account."[17]  Wesley does not know the third party that Snap had been attempting to reach by placing calls to her cellphone.[18]

After Snap acknowledged it had been calling Wesley's number in error, Snap placed at least one more call to Wesley's cellphone on or around February 24, 2020 in an attempt to reach the unrelated third party.[19]  Snap also delivered at least one text message to Wesley's cellphone number to reach the third party on or around February 26, 2020.[20]  The screenshot of the text message purports to be from the short form number "67329," and states:  "Derrick, This is Snap

---

[13] *Id.* ¶ 25.

[14] *Id.* ¶ 14.

[15] *Id.* ¶¶ 15, 16.

[16] *Id.* ¶ 18.

[17] *Id.* ¶ 19.

[18] *Id.* ¶ 20.

[19] *Id.* ¶ 21.

[20] *Id.* ¶ 22.

Finance.  We have a special settlement offer of $596 for you.  Please call 855-296-0213, or respond to this text."[21]  When dialed, the number in the text message plays a recorded greeting that begins: "Hi, thanks for calling Snap Finance . . . ."[22]

### Procedural History

Wesley filed this lawsuit on March 6, 2020.[23]  On December 4, 2020, Wesley filed an Amended Complaint.[24]  In it, Wesley brings one claim against Snap under the TCPA alleging two alternative theories of liability: first, that Snap violated the TCPA through its use of an automatic telephone dialing system (ATDS),[25] and second, that Snap violated the TCPA by use of artificial or prerecorded voice.[26]  Wesley seeks to bring the artificial/prerecorded voice TCPA claim on behalf of a class defined as:

> All persons throughout the United States (1) to whom Snap Finance LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance LLC accountholder, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) from February 27, 2016 through the date of class certification.[27]

On April 16, 2021, Wesley filed a Motion to Certify a Class, seeking certification of her proposed artificial/prerecorded voice TCPA class.[28]  In her Motion, Wesley relies on a proposed notice plan described in the declaration of Carla A. Peak.[29]  On May 14, 2021, Snap filed a

---

[21] *Id.* ¶ 22.

[22] *Id.* ¶ 23.

[23] Dkt. 2 (Complaint).

[24] Dkt. 40.

[25] *Id.* ¶¶ 66, 68.  The court recently dismissed Wesley's TCPA claim based on its use of an ATDS without prejudice after the Supreme Court clarified the statutory definition of the term in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).  Dkt. 91.

[26] Dkt. 40 ¶ 67.

[27] *Id.* at ¶ 34.

[28] Dkt. 64 (Motion to Certify a Class).

[29] *Id.* at 17, 24.

Motion to Determine *Daubert* Issues, seeking to exclude Peak's testimony.[30]  The court heard

argument on both motions on September 9, 2021.[31]  The motions are now fully briefed and ripe

for review.

Because the expert testimony Snap seeks to exclude would potentially impact Wesley's

Motion to Certify a Class, the court first addresses Snap's Motion to Exclude the Testimony of

Wesley's Class Notice Expert before turning to Wesley's class certification motion.

### I.         Motion to Exclude Testimony

Snap moves to exclude the testimony of Wesley's notice expert, Carla A. Peak, pursuant

to Federal Rule of Evidence 702.[32]

Rule 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training,
or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the
trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the
case.[33]

Under this Rule, the court performs a gatekeeper function in considering proffered expert

testimony and may "admit the testimony . . . so long as the expert is qualified and the expert's

opinion is both relevant and reliable."[34]  "Specifically, Rule 702 permits expert testimony by a

witness who is qualified if the expert's testimony is helpful to the jury and is reliable in that it is

---

[30] Dkt. 73 (Motion to Determine Daubert Issues).

[31] *See* Dkt. 91.

[32] Dkt. 73.

[33] Fed. R. Evid. 702.

[34] *Heer v. Costco Wholesale Corp.*, 589 Fed. App'x 854, 861 (10th Cir. 2014) (unpublished) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

based on sufficient facts or data; . . . is the product of reliable principles and methods; and . . . the expert has reliably applied the principles and methods to the facts of the case."[35]

The proponent of expert testimony bears the burden of showing its admissibility, "and district courts have considerable latitude in determining whether the proponent has satisfied this burden."[36]  Although "exclusion of expert testimony under Rule 702 is the exception rather than the rule . . . a district court may properly exclude such testimony when the opinion evidence is connected to existing data only by the *ipse dixit* of the expert such that there is simply too great an analytical gap between the data and the opinion offered."[37]

Snap moves to exclude Peak's testimony concerning Wesley's proposed notice plan for her TCPA class.[38]  Snap argues Peak's testimony should be excluded because the notice plan cannot reliably identify proposed class members and it "does nothing to advance class certification."[39]  Snap also argues Peak is not qualified to provide expert testimony about the proposed class notice plan.[40]  The court disagrees on both counts.

Wesley has demonstrated Peak's testimony is admissible under Rule 702 and *Daubert*. First, Wesley has demonstrated Peak is qualified to serve as an expert for class action notice plans.  Experts are qualified "by knowledge, skill, experience, training, or education" to render an opinion.[41]  Peak has worked in the legal notice field for over fifteen years and is currently employed at KKC Class Action Services, LLC as the Vice President of Legal Notification

---

[35] *Heer*, 589 F. App'x at 861 (citations omitted).

[36] *Id.* (citing *Kumho Tire v. Carmichael*, 526 U.S. 137, 152 (1999) (other citations omitted)).

[37] *Id.* (internal quotation marks and citations omitted).

[38] Dkt. 73.

[39] *Id.* at 6.

[40] *Id.* at 9–10.

[41] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702).

Services.[42]  She has also served as an expert in numerous federal and state cases involving class action notice plans.[43]  Snap argues Peak is not qualified because she "has no experience in statistical sampling and has never performed any testing of the third-party vendor data she proposes to use."[44]  Without this experience, Snap contends Peak is not qualified to identify potential class members.[45]  However, this argument misstates the purpose for which Wesley relies on Peak's testimony.  Wesley does not rely on Peak's testimony to identify potential class members to satisfy any requirement under Federal Rule of Civil Procedure 23(a), as Snap insists.[46]  Rather, Wesley cites Peak's testimony for support that her proposed class is manageable because class members can be notified after certification by the procedures outlined in Peak's testimony.[47]  Wesley has demonstrated Peak's substantial experience in class action notice plans makes her qualified to provide testimony concerning a notice plan for this TCPA claim.

Second, Wesley has demonstrated Peak's testimony is reliable.  The court determines reliability "by assessing the underlying reasoning and methodology, as set forth in *Daubert*."[48]  "Reliability questions may concern the expert's data, method, or his application of the method to the data."[49]  Peak's testimony describes the notification process she will employ for Wesley's

---

[42] Dkt. 79 (Wesley's Opposition to *Daubert* Motion) at 7; *see also* Dkt. 64-23 (Declaration of Carla Peak) ¶¶ 1,6.

[43] Dkt. 79 at 7–8; Dkt. 64-23 (Peak Decl.) ¶ 2.

[44] Dkt. 73 at 9–10.

[45] *Id.* at 10.

[46] *See* Dkt. 82 (Snap's Reply) at 1 ("Ms. Peak's testimony is the only evidence Plaintiff presents on her motion for class certification as a purported means to definitively determine several critical issues on class certification– including numerosity, predominance, and superiority.").

[47] Dkt. 79 (Wesley's Opposition) at 7–8.

[48] *Nacchio*, 555 F.3d at 1241 (citing *United States v. Rodriguez-Felix*, 450 F.3d 1117, 11123 (10th Cir. 2006)).

[49] *Id.* (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)); *see also* Fed. R. Civ. P. 702.

proposed TCPA class action.[50]  This notification process aims to identify the names and addresses of potential class members for which only a telephone number is available.[51]  Peak's testimony describes how she plans to notify potential class members using Snap's call logs as a starting point including a process which confirms whether each telephone number is assigned to a cellphone,[52] employing "reverse lookup procedures,"[53] verifying addresses,[54] and creating media and publication notice campaigns.[55]  Snap contends Peak's method is not reliable because it is not based on the facts of this case.[56]  In other words, Snap takes issue with Peak's notice plan because she has not yet gone through the plan and identified any other *bona fide* class member.[57]  This concern is unrelated to whether her notice plan is based on a reliable method.  Wesley has demonstrated Peak's proposed notice plan follows an accepted and often used method in providing notice to potential TCPA class members.[58]  Accordingly, the court concludes Peak's testimony is reliable.

Last, Wesley has demonstrated Peak's testimony is relevant to the class certification motion.  Evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence."[59]  Wesley relies on Peak's testimony in support of her Motion to Certify a Class to demonstrate her proposed class is manageable under

---

[50] Dkt. 79 at 4–5; *see also* Dkt. 64-23 (Peak Decl.) ¶ 8.

[51] Dkt. 79 at 5; Dkt. 64-23 (Peak Decl.) ¶ 8.

[52] Dkt. 79 at 5; Dkt. 64-23 (Peak Decl.) ¶¶ 14, 15.

[53] Dkt. 64-23 (Peak Decl.) ¶ 16.

[54] *Id.* ¶ 21.

[55] *Id.* ¶ 19.

[56] Dkt. 73 at 7.

[57] *See id.* at 7–8.

[58] *See, e.g., LaVigne v. First Cmty. Bancshares, Inc.*, 330 F.R.D. 293, 296 (D. N.M. 2019) (concluding a similar reverse lookup procedure offered the "best notice practicable under the circumstances").

[59] Fed. R. Evid. 401.

the superiority requirement of Federal Rule of Civil Procedure 23(b)(3).[60]  Wesley also relies on

this testimony to support her proposed notice plan pursuant to Rule 23(c)(2)(B).[61]  Snap's

Motion to Exclude the Testimony of Carla A. Peak is DENIED.[62]

## II.    Motion to Certify a Class

Wesley seeks certification of a TCPA class based on Snap's alleged use of artificial or

prerecorded voice.[63]  She defines the class as,

> All persons throughout the United States (1) to whom Snap Finance LLC placed,
> or caused to be placed, a call, (2) directed to a number assigned to a cellular
> telephone service, but not assigned to a current or former Snap Finance LLC
> accountholder, (3) in connection with which Snap Finance LLC used an artificial
> or prerecorded voice, (4) from February 27, 2016 through the date of class
> certification.[64]

Wesley estimates this class could consist of up to 82,780 members.[65]

### a.    Legal Standard

Rule 23 of the Federal Rules of Civil Procedure provides the standard for deciding class

certification motions.[66]  This Rule, however, "does not set forth a mere pleading standard."[67]  As

the party seeking class certification, Wesley has the burden of "affirmatively demonstrat[ing]

[her] compliance with Rule 23."[68]  To meet this burden, Wesley must first demonstrate the four

prerequisites set out in Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and

---

[60] Dkt. 64 at 17.

[61] *Id.* at 24.

[62] Dkt. 73.

[63] Dkt. 64.

[64] *Id.* at 1.

[65] *Id.* at 7.

[66] *See* Fed. R. Civ. P. 23; *see also Shook v. El Paso Cty.*, 386 F.3d 963, 971 (10th Cir. 2004) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (citation omitted).

[67] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation marks and citation omitted).

[68] *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

(4) adequate representation.[69]  After this showing, she must meet one of the requirements established by Rule 23(b).[70]  Wesley seeks certification under Rule 23(b)(3), which requires her to demonstrate that "[1] questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[71]

The court's analysis "frequently . . . will entail some overlap with the merits of the plaintiff's underlying claim,"[72] but "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."[73]  Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[74]

"The decision whether to grant or deny class certification involves intensely practical considerations . . . and therefore belongs within the discretion of the trial court."[75]  The court should certify a class only if, "after rigorous analysis," it concludes "that the prerequisites of Rule 23[] have been satisfied."[76]

---

[69] Fed. R. Civ. P. 23(a)(1)–(4); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013).

[70] *See Esplin v. Hirschi*, 402 F.2d 94, 98 (10th Cir. 1968).

[71] Fed. R. Civ. P. 23(b)(3).

[72] *Tripp v. Berman & Rabin, P.A.*, 310 F.R.D. 499, 503 (D. Kan. 2015) (quoting *Dukes*, 564 U.S. at 351) (brackets and ellipses omitted).

[73] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

[74] *Id.*

[75] *Tabor*, 703 F.3d at 1227 (quotation marks and citations omitted).

[76] *Comcast*, 569 U.S. at 33 (citation omitted).

b.      **Analysis**

The court first addresses the Rule 23(a) requirements, before turning to Rule 23(b)(3). For the reasons that follow, the court concludes Wesley has satisfied her burden to certify a class more narrowly defined than the one she proposes.

1.      **Rule 23(a) Requirements**

Rule 23(a) permits a member of a class to sue as a representative party "on behalf of all members only if:"

> (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[77]

To meet her burden under Rule 23(a), Wesley must "be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)."[78]  To determine if Wesley has met her burden, the court "must accept the substantive allegations of the complaint as true" and "may probe behind the pleadings and examine the facts and evidence in the case."[79] "[A]ctual, not presumed, conformance with Rule 23(a)" is required.[80]

A.      **Numerosity**

Under Rule 23(a)(1), the party seeking certification has the burden to establish that "the class is so numerous that joinder of all members is impracticable."[81]  To satisfy that burden here, Wesley "must produce some evidence or otherwise establish by reasonable estimate the number

---

[77] Fed. R. Civ. P. 23(a)(1)–(4).

[78] *Comcast*, 569 U.S. at 33 (quoting *Dukes*, 564 U.S. at 350) (emphasis in original).

[79] *Tripp*, 310 F.R.D. at 503 (quotation marks and citations omitted).

[80] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

[81] Fed. R. Civ. P. 23(a)(1).

of class members who may be involved."[82]  In the Tenth Circuit "there is no set formula to determine if the class is so numerous that it should be so certified."[83]  Instead, "there are [] several factors that enter into the impracticability issue . . . includ[ing] the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute."[84]  Because the numerosity requirement is a "fact-specific inquiry," the court has "wide latitude" to determine if it is satisfied.[85]

To meet her burden, Wesley relies on Snap's call logs from two different time periods when Snap was using different call technologies: before and after September 1, 2019.[86]

### i.    Before September 1, 2019

For the proposed class period before September 1, 2019, Wesley cites Snap's call logs to identify 76,662 cellular telephone numbers designated as "Wrong Numbers."[87]  Wesley acknowledges Snap's call logs from this time do not indicate whether Snap delivered a prerecorded voice message to these cellphone numbers.[88]  She nevertheless posits the court may make "a reasonable assumption . . . that Snap delivered prerecorded voice messages during the proposed class period [from March 2016–August 2019] to about 50,000 cellular telephone numbers it marked with a 'wrong number' notation."[89]  This estimate is based on the number of

---

[82] *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 373 (D. Utah 2020) (quoting *Tripp*, 310 F.R.D. at 504).

[83] *Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (internal quotation marks and citation omitted).

[84] *Id.* (internal quotation marks and citation omitted).

[85] *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1498 (10th Cir. 1992)).

[86] Dkt. 64 at 5.

[87] *Id.*

[88] *Id.*

[89] *Id.*

calls placed during this period and the fact that nearly 50% more cellular telephone numbers were marked as "Wrong Numbers."[90]

Snap argues this estimate fails to demonstrate numerosity for this period of the proposed class because it is based on "sheer guesswork."[91]  Snap asserts it is "undisputed that Snap has no way of determining whether it left a prerecorded message" during this time.[92]  In response, Wesley argues the only reason she must estimate the number of potential class members during this time period is because "Snap kept inadequate records."[93]  Inadequate records, Wesley contends, should not be "grounds to defeat the class certification or it would be fairly easy for defendants to defeat such motions."[94]

The court concludes Wesley has failed to adequately support her demonstration of numerosity for the proposed class period prior to September 1, 2019.  The court agrees with Wesley that a defendant's inadequate records should not preclude class certification.  However, as the party seeking certification, it is her burden to demonstrate numerosity despite Snap's inadequate records.[95]  To meet that burden, Wesley is required to "produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved."[96]  Here, Wesley has not presented the court with any facts beyond her own assumption to support the estimated 50,000 class members.[97]  Her assumption, untethered to any

---

[90] *Id.*

[91] Dkt. 71 at 11.

[92] *Id.* at 3.

[93] Dkt. 78 (Snap's Reply) at 2 n.5.

[94] *Id.* (citing *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 614 (S.D. Fla. 2009); *see also Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000)).

[95] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) ("The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied.") (citation omitted).

[96] *Lawrence*, 336 F.R.D. at 373 (citing *Tripp*, 310 F.R.D. at 504).

[97] *See* Dkt. 64 at 5.

evidence, is insufficient to meet her burden to demonstrate numerosity for the proposed class period prior to September 1, 2019.

Rather than strike the proposed class altogether, the court may employ less drastic measures.  "If the court finds that the proposed definition is not sufficiently definite, it may modify the definition instead of dismissing the proposed action."[98]  Because the court concludes Wesley has sufficiently demonstrated numerosity for the proposed class period after September 1, 2019, the court limits the proposed class to that time period.

### ii.    After September 1, 2019

Using Snap's call logs from September 1, 2019 through August 2020, Wesley attempts initially to estimate the number of class members by pointing to 32,780 cellphone numbers marked in Snap's call logs as "wrong numbers," to which Snap delivered a prerecorded message.[99]  The court agrees with Wesley that these call logs establish a sufficiently large number of class members who fit the court's modified proposed class definition.

Snap argues Wesley has not met her burden to demonstrate numerosity because she fails to "identify even one individual class member."[100]  This misstates Wesley's burden at this stage. Although Wesley "bears the burden of establishing numerosity, she need not establish any precise number of class members at this stage, or have already identified who is part of the class."[101]  Numerosity may be established based on a reasonable estimate of ascertainable class

---

[98] *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999); *see also Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("[D]istrict courts have broad discretion to modify class definitions . . . .").

[99] Dkt. 64 at 5.

[100] *Id.*

[101] *Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457, at *3 (D. N.M. June 5, 2018) (citations omitted).

members.[102]  The evidence presented by Wesley of Snap's call logs after September 1, 2019 establishes a reasonable estimate of such class members.

In an attempt to demonstrate the inaccuracy of its own call logs, Snap offers an expert report estimating 92.6% "wrong number" designations in Snap's call logs could actually be Snap customers.[103]  In other words, Snap's expert opines it is possible that up to 92.6% of Wesley's proposed class would not satisfy her class definition because they are customers of Snap. However, even accepting Snap's lowest estimate that only as many as 7.4% of the total 32,780 cellphone numbers called during this time period, or around 2,425 wrong number designations, resulted in calls to noncustomers, this evidence still supports a finding that numerosity is satisfied here.[104]  Based on the evidence Wesley produced—Snap's own call logs—she has adequately provided a "reasonable estimate [of] the number of class members who may be involved."[105]  This number establishes that "the class is so numerous that joinder of all members is impracticable."[106]  Accordingly, the court concludes Wesley has satisfied the numerosity requirement for a class period beginning on September 1, 2019.

---

[102] *See Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (court was reasonable in inferring under circumstances that there would be substantial number of class members); *Neiberger v. Hawkins*, 208 F.R. D. 301, 313 (D. Colo. 2002) ("the exact number of potential members need not be shown"); *Ditty v. Check Rite, Ltd.*, 182 F.R.D. 639, 641 (D. Utah 1998) (citing *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir.1981)) (noting it is not "necessary that the plaintiffs identify the exact number of class members involved[, because] courts have often used common sense assumptions to support a finding of numerosity.").

[103] Dkt. 71 at 6 (citing Dkt.71-7 (Expert Report of Margaret Daley) ¶¶ 70, 95).

[104] *Lavigne*, 2018 WL 2694457, at *4 (noting "[e]ven if only a fraction of the approximately 38,125 [of wrong number calls] are in fact class members, the numerosity requirement here is readily satisfied") (citing *West v. California Servs. Bureau, Inc.*, 2017 WL 6316823, at *7 (N.D. Cal. 2017); *Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *3 (C.D. Cal. 2016) ("Because joinder of even a fraction of these individuals is impracticable, Rule 23(a)'s numerosity requirement is readily satisfied.")).

[105] *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 373 (D. Utah 2020) (quoting *Tripp*, 310 F.R.D. at 504).

[106] Fed. R. Civ. P. 23(a)(1).

B.      **Commonality**

Under Rule 23(a)(2), a plaintiff "must demonstrate that there are 'questions of law or fact common to [each] class.'"[107]  This requires Wesley to be part of the class and "possess the same interest and suffer the same injury" as the putative class members.[108]  The plaintiff's and class members' "claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[109]  Indeed, "[w]hat matters to class certification is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."[110]  A single common question may satisfy this requirement.[111]

Wesley asserts each putative class member suffered the same injury: they all received an unsolicited telephone call from Snap on their cellular telephone number.[112]  Wesley argues three questions common to the class arise from this injury: (1) whether Snap "used a prerecorded voice in connection with the calls at issue;"[113] (2) whether the class members "are entitled to the statutorily mandated relief;"[114] and (3) whether liability attaches to Snap's wrong number calls.[115]

---

[107] *Tripp*, 310 F.R.D. at 505 (quoting Fed. R. Civ. P. Rule 23(a)(2)) (alteration in original).

[108] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation marks and citation omitted).

[109] *Dukes*, 564 U.S. at 350.

[110] *Id.*

[111] *Id.* at 359.

[112] Dkt. 64 at 8; *see also id.* at n.8.

[113] Dkt. 64 at 8.

[114] *Id.* at 9.

[115] *Id.*

Snap argues there are two individual issues underlying Wesley's TCPA claim that preclude a finding of commonality.  First, Snap contends questions concerning whether Snap used a prerecorded voice in connection with the calls at issue is not a common question because it requires an individualized inquiry as to whether the prerecorded message actually played.[116] Second, Snap argues commonality is defeated because an individual finding must be made concerning whether Snap had consent to call the telephone number.[117]  Despite the issues Snap raises, the court concludes Wesley has met her burden to demonstrate commonality.

In making each argument, Snap combines the commonality analysis with the question of whether Wesley has met the predominance requirement under Rule 23(b)(3).[118]  Snap's concerns about the individualized issues of consent and whether a prerecorded message "actually played" are more appropriately aimed at the predominance element under Rule 23(b)(3).[119]  The court will address each concern when addressing that requirement later in the analysis.  Moreover, neither issue overcomes Wesley's satisfactory demonstration that there are "questions of law or fact common" to her proposed class. [120]

The court concludes Wesley has identified common questions to all class members likely "to generate common answers apt to drive the resolution of litigation."[121]  Because of her narrowly tailored class definition, including only noncustomers of Snap, proposed class members

---

[116] Dkt. 71 at 16 (citations omitted).

[117] *Id.* at 17.

[118] *Id.* at 15 (arguing Wesley "has failed to establish commonality or that common questions predominate").

[119] *See Sliwa v. Bright House Networks, LLC*, 33 F.R.D. 255, 274 n.18 (M.D. Florida 2019) (explaining Defendants' argument against commonality concerning the individualized issue of whether a "pre-recorded voice actually played" "is more appropriately discussed under the predominance analysis").

[120] *Tripp*, 310 F.R.D. at 505 (quoting Fed. R. Civ. P. Rule 23(a)(2)) (alteration in original).

[121] *Dukes*, 564 U.S. at 350.

are likely to have similar interests and suffered a similar injury.[122]  Wesley's three identified common questions will also "provide common answers to legal and factual questions" for all class members.[123]  Whether Snap used an artificial or prerecorded voice will be answered using evidence of Snap's conduct, and will provide the same answer resolving an issue for the whole class.[124]  Accordingly, the court concludes Wesley has met her burden to meet the commonality requirement.

## C.    Typicality

Under Rule 23(a)(3), a plaintiff must demonstrate that her "claims . . . are typical of the claims . . . of the class."[125]  "[L]ike commonality, typicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[126]  But the typicality requirement does "not require that every member of the class share a fact situation identical to that of the named plaintiff."[127]  Rather, this

---

[122] *See Falcon*, 457 U.S. at 156; *Lavigne*, 2018 WL 2694457, at *4 (concluding the plaintiff satisfied the commonality in a TCPA class "[b]ecause of the narrowly tailored class definition, the factual situation for all class members appears to be the same.").

[123] *Lavigne*, 2018 WL 2694457, at *4 (citing *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 309 (S.D. Cal. 2015) (concluding "the factual situation for all the class members here is the same, that is, defendant called third parties on their cellular telephone number via an ATDS and/or prerecorded voice without prior express consent after defendant was on notice that it was calling a third party."); *Stern v. DoCircle, Inc.*, No. SA-cv-12-2005-AG-JPRx, 2014 WL 486262, at *4 (C.D. Cal. Jan. 29, 2014) ("What steps Defendant took to comply with TCPA, and whether it can be held to have negligently or willfully violated the TCPA when it took those steps, are factual and legal issues common to all class members."); *Munday v. Navy Fed. Credit Union*, No. SA-cv-15-1629-JLS-KESx, 2016 WL 7655807, at *4 (C.D. Cal. Sept. 15, 2016) ("Here, the crux of this action turns on whether, in fact, [the defendant's] coded certain telephone numbers as a "wrong number," but, nevertheless, continued to call "a portion of the coded 'wrong numbers'" as a result of "a 'gap' in [the defendant's] system logic."  An affirmative determination on this issue would generate [a] common answer apt to drive the resolution of the litigation.").

[124] *See, e.g.*, *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019) (concluding in a TCPA class that "[w]hether Defendant used an ATDS or an artificial or prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke.") (internal quotation marks and citations omitted).

[125] Fed. R. Civ. P. 23(a)(3).

[126] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) (citation omitted).

[127] *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (citation omitted).

requirement is met "so long as the claims of the class representative and class members are based on the same legal or remedial theory."[128]

Wesley contends her claim is typical of the claims of members of the proposed class because the class definition includes only noncustomers of Snap who received prerecorded voice calls.[129]  Because her class is defined by noncustomers, Wesley argues the alleged harm she has suffered—Snap delivering prerecorded voice messages to her cellular telephone number—is similar if not identical to the harm suffered by other class members.[130]  Snap contends that Wesley cannot demonstrate her claims are typical of the proposed class members' claims because (1) she has not identified any other class member, and (2) lack of standing is a unique defense available against Wesley.[131]  The court disagrees.

Snap's first argument is without merit.  Snap contends Wesley cannot demonstrate her claims are typical of the claims of the proposed class because she has not identified "a single person similarly situated to her."[132]  As the court previously addressed, Wesley is not required to identify any other class member at the class certification stage.[133]  Snap points to no authority to support the proposition that failure to specifically identify one or more class members defeats a plaintiff's showing of typicality.  The case Snap attempts to rely on supports the opposite

---

[128] *Id.* (citation omitted).

[129] Dkt. 64 at 10.

[130] *Id.*

[131] Dkt. 71 at 15.

[132] *Id.* at 14.

[133] *See Lavigne*, 2018 WL 2694457, at *3 (noting that plaintiffs are not required to "identif[y] who is part of the class") (citations omitted).

proposition, noting that "the identity of individual class members need not be ascertained before class certification[.]"[134]

Snap's second argument also fails to defeat Wesley's demonstration of typicality.  Snap argues Wesley cannot meet the typicality requirement because her claims are subject to a unique defense: that Wesley lacks standing to bring her TCPA claim.[135]  A unique defense may destroy typicality if that defense is "likely to become a major focus of the litigation."[136]  This is because the lead plaintiff "might devote time and effort to the defense at the expense of issues that are common and controlling for the class."[137]  Here, Snap has failed to produce any evidence to suggest Wesley's standing will become a focus of the litigation.

A plaintiff enjoys Article III standing to sue if they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[138]  To establish an injury in fact, Wesley must demonstrate that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[139]  "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way."[140]  To be

---

[134] *Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 397 (D. Colo. 2014) (internal quotation marks and citation omitted).

[135] Dkt. 71 at 22.

[136] *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 687 (D. Colo. 2014) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir.2012)) (internal quotation marks omitted).

[137] *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. at 687 (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir.2006)) (internal quotation marks omitted).

[138] *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

[139] *Id.* at 1231 (quoting Spokeo, 136 S. Ct. at 1548).

[140] *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks and citation omitted).

"concrete," an injury "must be 'de facto'; that is, it must actually exist."[141]  A concrete injury is not synonymous with "tangible"; "intangible injuries can [] be concrete."[142]

Courts have concluded "an invasion of . . . privacy can be considered a 'concrete' harm—a harm that actually exists—and is sufficient to confer standing on an individual who is suing to protect that interest."[143]  This is the precise injury alleged here.  Wesley alleges she suffered "actual harm as a result of [Snap's] calls in that she suffered an invasion of privacy, an intrusion into her life, and a private nuisance."[144]

Notwithstanding this allegation, Snap contends Wesley cannot demonstrate an invasion of privacy because she invited the calls from Snap.[145]  Where she invited Snap's calls, it asserts, she will be unable to demonstrate any invasion to her privacy as required for standing.[146]  To make this argument, Snap relies on *Garcia v. Credit One Bank*, the facts of which are clearly distinguishable from any evidence presented here.[147]  The plaintiff in that case "kept re-purchasing pre-paid phone minutes, apparently in order to keep receiving unwanted calls."[148]  This fact, along with his knowledge that "if he instructed [the defendant] at any time during one of these calls to cease calling him, [defendant] would have likely complied," led the court to

---

[141] *Id.* at 1549.

[142] *Id.*

[143] *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1144 (D. N.M. 2016); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (concluding "[a] plaintiff alleging a violation under the TCPA need not allege any additional harm beyond" the invasion of privacy because that is the precise "interest[]" Congress sought to protect in enacting the TCPA"); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (same); *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85, 94–95 (2nd Cir. 2019) (same).

[144] Dkt. 40 (Amended Complaint) ¶ 32.

[145] Dkt. 71 at 22–23.

[146] *Id.* at 23.

[147] *Id.* (citing *Garcia v. Credit One Bank*, Case No. 2:18-cv-191-JCM-EJY, 2020 WL 4431679, at * 3 (D. Nev. July 31, 2020)).

[148] *Garcia*, 2020 WL 4431679, at * 3.

conclude the plaintiff had not suffered an injury-in-fact because he filed the action "as part of a scheme to generate revenue."[149]  The court in *Garcia* compared the plaintiff's repurchasing of pre-paid phone minutes to the plaintiff in another case, *Stoops v. Wells Fargo Bank, N.A.*, where the plaintiff testified that she was filing TCPA lawsuits to generate revenue:

> Q. [W]hat prompted you to bring this lawsuit?
> A. Wells Fargo was calling me a phone—on a phone.
> Q. Okay.  Did anyone suggest to you to bring this lawsuit?
> A. Suggest to bring a lawsuit? Yes.
> Q. Who?
> A. Randy Miller.
> Q. Who is Randy Miller?
> A. My best friend from Lincoln, Nebraska.
> Q. Okay.  An[d]  why did Randy Miller suggest that?
> A. Well, he was the first to mention the possibility of me doing TCPA violations as a business.
> Q. Okay.  So are you bringing these lawsuits as a business?
> A. Yes, I am.[150]

The court in *Stoops* granted summary judgment in favor of the defendants because the plaintiff failed to demonstrate an injury-in-fact for standing.[151]  Where the plaintiff invited TCPA violations as an actual business and "admitted that her only purpose in using her cell phones is to file TCPA lawsuits," the court concluded the plaintiff could not demonstrate the defendant invaded their privacy as required to demonstrate an injury-in-fact of nuisance or invasion of privacy for standing.[152]

The facts here are materially different.  Snap relies on Wesley's employment history in the collection industry and related training concerning the TCPA.[153]  Snap contends that because

---

[149] *Id.*

[150] *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 798 (W.D. Pa. 2016).

[151] *Id.* at 803.

[152] *Id.* at 800.

[153] Dkt. 71 at 22–23.

Wesley knew how to make Snap's calls stop, and did not do so, she invited the calls.[154]  The

plaintiffs in *Garcia* and *Stoops,* however, did not lack standing solely because of their knowledge

of the TCPA.  Rather, each court concluded the plaintiffs lacked an injury-in-fact because they

actively sought out unsolicited calls by repurchasing pre-paid phone minutes or purchasing over

35 cellphones for the sole purpose of bringing TCPA lawsuits.[155]  Snap does not assert any facts

that would similarly suggest Wesley invited calls from Snap.  The record evidence in this case

does not support Snap's contention that Wesley was "manipulat[ing] companies into calling her

with collections calls (by allowing unwanted calls intended for another to roll in) [so that she]

could have a second career as a TCPA plaintiff.".[156]

To the contrary, Wesley's allegations here sufficiently allege an injury-in-fact for

Article III standing to bring a claim under the TCPA and Snap has not presented any evidence to

support the contention that she will be unable to demonstrate this injury throughout the

litigation.[157]  The court disagrees with Snap that this is a potential defense defeating Wesley's

showing of typicality.

Wesley has defined her proposed class to include only noncustomers of Snap.[158]  Because

of this narrow definition, she has demonstrated her claims and the class members' claims are

---

[154] *Id.*  Wesley disputes that she did not answer Snap's calls in an attempt to stop them from continuing and provides evidence in support of her argument.  Dkt 78 at 8–9.  Wesley also alleges she did answer Snap's calls on occasion in an attempt to make the calls stop.  Dkt 40 at ¶ 10.  In a Motion to Certify a Class, "the court must accept the substantive allegations of the complaint as true and may probe behind the pleadings and examine the facts and evidence in the case."  *Lawrence v. First Fin. Inv. Fund V, LLC*, 336 F.R.D. 366, 373 (D. Utah 2020).

[155] *See Garcia*, 2020 WL 4431679, at * 3; *Stoops*, 197 F. Supp. 3d at 799 (noting the plaintiff testified that she has over 35 cell phone numbers in order to bring a TCPA lawsuit).

[156] Dkt. 71 at 23.

[157] *See LaVigne*, 215 F. Supp. 3d at 1146 (compiling cases "finding that the bare statutory violation of the TCPA constitutes sufficient 'concrete' injury for Article III standing").

[158] *See* Dkt. 64 at 1.

likely "based on the same legal or remedial theory."[159]   The court concludes she has satisfied the typicality requirement.

### D.      Adequacy of Representation

The last requirement of Rule 23(a) is that the class representative "fairly and adequately protect the interests of the class."[160]  This "factors in competency and conflicts of class counsel,"[161] and requires the class representative and their counsel (1) not have any "conflicts of interest with other class members," and (2) "prosecute the action vigorously on behalf of the class."[162]

Snap contends Wesley fails both requirements, relying on its prior argument that Wesley is susceptible to a unique defense—that she lacks standing to bring the TCPA claim.[163]  For the reasons already explained, the court disagrees.  Wesley has demonstrated she is an adequate representative of her proposed class.

Under the first adequacy prong, conflicts may exist when the class representative "put[s] [her] own interests above those of the class."[164]  Wesley maintains she has no conflicts with the proposed class members.[165]  During her deposition, Wesley testified that her employment experience in debt collection does not, and will not, create a conflict with members of the proposed class.[166]  She also testified that she is seeking the same recovery both for herself and

---

[159] *Colo. Cross Disability*, 765 F.3d at 1216 (citation omitted).

[160] Fed. R. Civ. P. 23(a)(4).

[161] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).

[162] *Rutter*, 314 F.3d at 1187–88 (citations omitted).

[163] Dkt. 71 at 22.

[164] *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1204 (10th Cir. 2006).

[165] Dkt. 40 ¶ 49.

[166] Dkt. 64 at 12 (citing Dkt. 64-4 (Deposition Transcript of Brandi Wesley) at 236:14–237:5).

the other proposed class members.[167]  In addition, Wesley's counsel submitted a joint declaration with her Motion asserting they have no conflicts of interest with putative class members.[168]

To satisfy the adequacy second prong, Wesley represents in her declaration that she has been actively involved in this case and is "committed to protecting the interests of the class members [she] seek[s] to represent."[169]  She has already been deposed by Snap and effectively testified to her responsibilities as a class representative.[170]  Wesley's counsel similarly represent, in Radbil's Declaration, that they will vigorously protect the interests of members of the proposed class.[171]  Wesley's counsel represents that Greenwald Davidson Radbil PLLC has the resources and time to support the putative class.[172]  Aaron Radbil represents that he, Michael L. Greenwald, James L. Davidson, Jesse S. Johnson, and Alexander D. Kruzyk, all have extensive experience litigating consumer protection class actions.[173]  The court has identified no reason to doubt counsel's competency to litigate this matter, nor has Snap advanced one.[174]  Wesley has demonstrated she and her counsel will adequately protect the interests of the class.

## 2.    Rule 23(b)(3) Requirements

Having concluded Wesley has satisfied each element of Rule 23(a), the court now turns to the requirements of Rule 23(b)(3).  Under Rule 23(b)(3), Wesley must demonstrate "[1] that the questions of law or fact common to class members predominate over any questions affecting

---

[167] Dkt. 64 at 11–12 (citing Dkt. 64-4 (Deposition Transcript of Brandi Wesley) at 34:3–11; 35:10–13; 81:10–82:7; 83:18–84:11).

[168] Dkt. 64-22 (Declaration of Aaron D. Radbil) ¶ 46.

[169] Dkt. 64-21 (Declaration of Brandi Wesley) ¶ 4.

[170] *Id.* ¶¶ 8, 9.

[171] Dkt. 64-22 (Radbil Decl.) ¶ 42 (referring to the law firm rather than attorneys).

[172] *Id.* ¶¶ 43–45.

[173] *Id.* ¶¶ 24, 28, 33, 36, 37, 40, 41.

[174] *See* Dkt. 71 at 22–24.

only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[175]  That is, "class status is appropriate as long as plaintiffs can establish an aggregation of legal and factual issues, the uniform treatment of which is superior to ordinary one-on-one litigation."[176]

Both parties also address ascertainability as a requirement prior to certifying a class.[177] In short, this prerequisite ensures the class is defined so that members are identifiable by reference to objective characteristics.[178]  Although the Tenth Circuit has not formally recognized ascertainability as a separate requirement, it appears this issue is appropriately considered as part of the Rule 23(b)(3) analysis.[179]

The court will first address the established elements of Rule 23(b)(3), predominance and superiority, before addressing the parties' ascertainability arguments.

## A.     Predominance

The commonality and predominance inquiries are similar, but "the predominance criterion is far more demanding[.]"[180]  This inquiry "regularly presents the greatest obstacle to class certification," because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."[181]  To determine if class issues predominate over individual issues, the court

---

[175] Fed. R. Civ. P. 23(b)(3).

[176] *CGC Holding*, 773 F.3d at 1086.

[177] *See* Dkt. 64 at 18; Dkt. 71 at 24.

[178] *See Lavigne*, 2018 WL 2694457, at *6, 6 n.4 (citing *Davoll v. Webb*, 194 F.3d 1116, 1146–47 (10th Cir. 1999)).

[179] *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) (noting "the lack of identifiability is a factor that may defeat Rule 23(b)(3) classification").

[180] *Amchem*, 521 U.S. at 624, (citation omitted).

[181] *CGC Holding*, 773 F.3d at 1087.

"characterize[s] the issues in the case as common or not, and then weigh[s] which issues predominate."[182]  This is done by "considering how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual."[183]

The court first identifies "the elements of the underlying cause[s] of action,"—a TCPA claim based on prerecorded or artificial voice—before analyzing whether the issues presented are susceptible to resolution with common or individualized evidence or legal determinations.[184] Next, the court addresses Snap's arguments under the same framework, i.e., determining whether the issues are common or individual and whether the individual issues outweigh the common issues.

1.      **TCPA Claim**

To prevail on her TCPA claim, a plaintiff must prove that "(1) the defendant called plaintiff's cellular telephone (2) using . . . an artificial or prerecorded voice (3) without the plaintiff's prior express consent."[185]  Wesley is proceeding here on the basis of prerecorded messages, not artificial voice.

The first TCPA element presents an issue in common because, although it is a factual inquiry as to each class member, this element can be established through common evidence,

---

[182] *Id*.

[183] *Menocal*, 882 F.3d at 915 (brackets, ellipses, and citation omitted).

[184] *CGC Holding*, 773 F.3d at 1088.

[185] *Asher v. Quicken Loans, Inc.*, No. 2:17-cv-1203, 2019 WL 131854, at *1 (D. Utah Jan. 8, 2019) (citation omitted); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (citing 47 U.S.C. § 227(b)(1)(A)) (stating the TCPA "makes it unlawful to use . . . an artificial or prerecorded voice message, without the prior express consent of the called party, to call any . . . cellular telephone[.]").

namely Snap's business records.[186]  Similarly, the second element is an issue common to each

class member because it can be resolved based on facts only related to Snap and whether it used

prerecorded voice messages.  This too will be established through common evidence.  The issue

will not depend on any individualized facts or evidence concerning the putative class members.

The third element is an individual issue predominated by common issues.  This element

will require the court to determine whether each class member gave prior express consent to

Snap to contact their cellular telephone number.  Wesley asserts the individual issue of consent

does not outweigh the common issues.  She contends that where her proposed class definition

includes only noncustomers of Snap, the class includes only those "who necessarily did not

provide Snap with prior express consent to place calls to their cellular telephone numbers."[187]

The court agrees with Wesley, and other courts evaluating similarly defined classes, that this

individual issue is predominated by common issues.[188]

## 2.    Snap's Arguments

Snap disagrees that common issues predominate, identifying two individual issues that it

argues defeats Wesley's showing.  Snap contends the second and third elements of a TCPA claim

raise individual issues that predominate over any common issues.[189]

---

[186] *Braver v. Northstar Alarm Services, LLC*, 329 F.R.D. 320, 331 (W.D. Oklahoma 2018) (concluding whether "every class member received a call" was an issue in common); *Lavigne*, 2018 WL 2694457, at *7  (concluding there was predominance where the TCPA "class members appear to be in the same factual situation, and the class is likely to fail or succeed on the merits (such as whether class members expressly revoked consent) on the same common evidence, i.e., Defendants' business records.").

[187] Dkt. 63 at 13.

[188] *See, e.g.*, *Lavigne*, 2018 WL 2694457, at *8 (concluding issues of consent do not predominate over common issues in TCPA claim where class is defined by non-customers); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 301–02 (N.D. Cal. 2017) (concluding predominance requirement was satisfied given reverse look up procedures to ensure wrong numbers); *Abdeljalil v. Gen. Elec. Cap. Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (concluding the predominance requirement was satisfied despite individualized issues of consent).

[189] Dkt. 71 at 16–17.

Snap contends the second element—whether Snap uses an artificial or prerecorded voice—is an individual issue because this element requires the prerecorded voice message to "actually play."[190]   Snap contends the court will need to determine whether each class member received a message that "actually played" based on individualized evidence that would predominate over common issues.[191]   Snap cites various reasons a call might be placed by Snap, and reflected on its call logs, but a prerecorded message not "actually play," including where a voicemail box is not set up, is deactivated, or is full, or where the recipient uses call-blocking technology.[192]   Because of this, Snap contends the court will need to make an individual inquiry into each call to determine whether or not a prerecorded voice message played.[193]   Snap maintains this element will be overcome by individual issues because of the various evidence, only in the hands of purported class members, which may establish whether or not an artificial or prerecorded message actually played.

But Wesley presents evidence of Snap's own call logs to demonstrate this issue can be resolved using common evidence.[194]   Wesley argues Snap's call logs from after September 1, 2019 can be used "to determine whether it attempted to deliver a prerecorded voice message to a telephone number and whether Snap 'actually left the message,' by reviewing call disposition codes and call duration indicators[.]"[195]   Wesley contends reviewing call disposition codes in Snap's call logs can resolve the issue of whether the prerecorded voice message "actually

---

[190] *Id.* at 16 (citing *Ybarra v. Dish Network, LLC*, 807 F.3d 635, 640–41 (5th Cir. 2015)).

[191] Dkt. 71 at 16.

[192] *Id.*

[193] *Id.* at 16–17.

[194] Dkt. 78 at 4.

[195] *Id.*  Wesley does not present any common evidence that can be used to resolve this issue on a classwide basis for any time prior to September 1, 2019.  *See* Dkt. 78 at 4.  This lack of evidence further supports limiting the proposed class to the period after September 1, 2019.

played."[196]  Wesley cites Snap's deposition testimony to demonstrate that where the primary

disposition on the call log indicates "answering machine left message," the prerecorded message

"actually played."[197]  Snap testified that the call disposition code "answering machine left

message" means that "the system recognized that on the other end was an answering machine . . .

and left a prerecorded answering machine message."[198]

Wesley similarly contends the issue can be resolved by reviewing the call duration

indicators.[199]  Wesley cites testimony that where the call duration indicates a call of 55 seconds,

that indication can resolve the issue of whether a prerecorded voice message "actually

played."[200]  Snap testified that "if you look at the duration, [on the call log] its 55 seconds over

some of those shorter ones, that shows the answering machine was actually—the prerecorded

answering machine was actually leaving the message."[201]

With this evidence, Wesley has demonstrated Snap's call logs represent common

evidence that can be used to resolve the issue of whether the prerecorded voice message

"actually played," either by reference to the primary disposition code or the call duration.

Wesley has sufficiently demonstrated that the issue of whether Snap called the putative class

---

[196] Dkt. 78 at 4.

[197] *Id.*

[198] *Id.* (citing Dkt. 64-8 (Deposition Testimony of Adam Christensen) at 55:3–13; Dkt. 78-2 (Christensen Transcript Excerpt) at 60:24–61:9 (Q. Why do you say that that shows that the prerecorded message was being left?  A. Because of the primary disposition . . .  the answering machine left a message.).

[199] Dkt. 78 at 4.

[200] *Id.* (citing Dkt. 78-2 (Christensen Transcript Excerpt) at 60:24–61:9).

[201] Dkt. 78-2 (Christensen Transcript Excerpt) at 60:12–61:5.

members, including whether a prerecorded voice message "actually played," can be resolved with common evidence.[202]

Snap next contends the third TCPA element—consent—is an individual issue that will predominate over any common issue.  In making this argument, Snap focuses on Wesley's use of its call logs.[203]  Snap contends that the "wrong number" indication in its call logs does not establish the prerecorded voice message was left without consent.[204]  Because of this, Snap argues, the issue of consent will require individualized proof that will predominate over the common issues in this case.[205]  The court disagrees.

Snap's consent argument based on Wesley's use of the call logs fails to demonstrate an individualized issue that would predominate over common issues to the class because the identified consent issues do not translate to Wesley's proposed class members—noncustomers of Snap.  The relevant question under this requirement is "whether [Wesley] can show that common questions subject to generalized, classwide proof predominate over individual questions."[206]  This means that the relevant individual issues are those among members of the proposed class.  Snap has identified an issue that likely would arise if Wesley defined her class by reference to the "Wrong Number" notations in its call logs.  If the proposed class was so defined, the inaccuracy of the records would raise an individualized issue of consent with the class members.[207]  But

---

[202] *See Menocal*, 882 F.3d at 915 (noting the characterization of common or individual issues depends on "how the class intends to answer factual and legal questions to prove its claim—and the extent to which the evidence needed to do so is common or individual.").

[203] Dkt. 71 at 17.

[204] *Id.*

[205] *Id.* at 17–18.

[206] *CGC Holding Co.*, *LLC v. Broad & Cassel*, 773 F.3d 1076, 1087.

[207] *See Revitch v. Citibank, N.A.*, No. c-17-06907-WHA, 2019 WL 1903247, at *1 (N.D. Cal. Apr. 28, 2019) (concluding "individualized issues of consent predominate" where the proposed class was defined with reference to the defendant's records); *Tomeo v. CitiGroup, Inc.*, No. 13-c-4046, 2018 WL 4627386, at *12 (N.D. Ill. Sept. 27, 2018) (same).

Wesley's proposed class is not defined by reference to "wrong number" calls.  Snap has not identified any individual issues among the class comprised of noncustomers of Snap that would overcome Wesley's demonstration of predominance.  Wesley has established "the questions of law or fact common to class members predominate over any questions affecting only individual members."

## B.  Superiority

In addition to predominance, Rule 23(b)(3) requires a plaintiff to "show that a class action would be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'"[208]  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[209]  There are four, non-exhaustive factors relevant to this inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claim in the particular forum; and (D) the likely difficulties in managing a class action.[210]

Applying these factors, Wesley has demonstrated that a class action presents a superior method to litigate this TCPA claim.

The first factor weighs in favor of superiority.  Wesley asserts the putative class members' claims arise from the same standardized conduct and result in uniform damages calculated on a

---

[208] *Menocal*, 882 F.3d at 915 (quoting Fed. R. Civ. P. 23(b)(3)).

[209] *Amchem*, 521 U.S. at 617.

[210] Fed. R. Civ. P. 23(b)(3)(A)–(D); *see Menocal*, 882 F.3d at 915 n.3 (noting that "[a]lthough Rule 23(b)(3) states that these factors are pertinent to both superiority and predominance, most courts analyze these factors solely in determining whether a class suit will be a superior method of litigation.") (quotation marks, brackets, and citation omitted).

per-prerecorded voice message basis.[211]  The similarity of the putative class members' claims supports this factor because "no one member of a TCPA class has an interest in controlling the prosecution of the action."[212]  Where the putative class members' claims are so similar, a class resolution is often superior to resolving each claim individually because it prevents reinventing the wheel for each putative class member.[213]  The amount recoverable in statutory damages also supports this factor, where recovery is $500–1,500 per call.[214]  "The class action device is frequently superior where proceeding individually would be difficult for class members with small claims."[215]  A class action resolution to this litigation "avoids this problem by aggregating what would otherwise be a series of 'too small' potential individual recoveries."[216]

The second and third factors also favor a finding of superiority.  Neither party has indicated there is any ongoing litigation concerning Snap's alleged TCPA violations by or against any class member.  Without any evidence to the contrary, this factor supports resolving Wesley's claim through a class action because this case can resolve Snap's liability under Wesley's TCPA

---

[211] Dkt. 64 at 16.

[212] *Id.* (citing *Knapper v. Cox Communications, Inc.*, 329 F.R.D. 238, 247 (D. Ariz 2019) (noting that individual litigation would be inefficient and increase litigation costs "particularly so for claims that all stem from the same cause of action and involve common issues.")).

[213] *See Lavigne*, 2018 WL 2694457, at *8 (concluding in a TCPA claim that "[i]t would be inefficient to reinvent [the] wheel on approximately 30,000 separate cases.").

[214] 47 U.S.C. § 227 (b)(3)(B) (noting the damages for each violation of the TCPA at $500 and allowing "the court . . . in its discretion, [to] increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.").

[215] *Braver v. Northstar Alarm Services, LLC*, 329 F.R.D. 320, 333 (quoting *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 WL 2317243, at *4 (D. Colo. May 28, 2013); *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 386 (2012) (recognizing that plaintiffs are unlikely to pay a $350 filing fee to advance an individual TCPA claim for $500)); *see also Lavigne*, 2018 WL 2694457, at *8 (concluding "[i]t is unlikely that putative class members will file a case under TCPA for $500–1500, and will have little interest[] in controlling the prosecution of the TCPA claims.").

[216] *Braver*, 329 F.R.D. at 333 (citing *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 659 (S.D. Fla. 2012)); *see also Banks v. Central Refrigerated Services, Inc.*, Case No. 2:16-cv-356-DAK, 2017 WL 1683056, at *9 (D. Utah May 2, 2017) (noting "Consumer claims, especially those where each plaintiff would only be entitled to a small amount of money if successful, are often appropriate claims for class actions.").

theory without conflicting rulings or impediments from other litigation.  As to the third factor, neither party disputes the desirability of concentrating the litigation of this TCPA claim in the current forum.

The fourth and final factor also weighs in favor of finding Wesley has satisfied the superiority requirement.  The "manageability" factor "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."[217]  Wesley asserts this case is manageable because Snap has already provided its call logs as a starting point for identifying potential class members.[218]  These call logs identify individual cellular telephone numbers designated as "wrong numbers" to which Snap delivered a prerecorded voice message.[219]  The call logs also identify the customer Snap was trying to reach by placing the call.[220]  Based on this information, Wesley asserts, "the names and addresses of individuals associated with the cellular telephone numbers to which Snap delivered prerecorded voice messages and marked with a 'wrong number' notation can be identified in a practical and efficient manner."[221]  To support this assertion, Wesley points to her proposed notice plan describing the process through which she will identify these names and addresses.[222]  This process includes de-duplicating the list to ensure a relevant cellphone telephone number appears on the list a single time, employing a reverse look-up strategy, and verifying the list through

---

[217] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

[218] Dkt. 64 at 17.

[219] *Id.*

[220] *Id.*

[221] Dkt. 64 at 17 (citing Dkt. 64-23 (Declaration of Carla A. Peak) ¶¶ 11–17, 19–23).

[222] *Id.*

several databases.[223]   Using the proposed method, Wesley has demonstrated the class can be

identified and managed in an efficient way.[224]

Snap disagrees that Wesley's proposed notice plan alleviates the problems with managing

this proposed class action.  Instead, it argues the individualized issues associated with Snap's call

logs "clearly demonstrate that individualized consent issues would require a series of mini-trials,

thus defeating predominance and superiority."[225]   The court has addressed this argument above.

Because Wesley's proposed class definition includes only people who were not customers of

Snap, individual issues of consent are unlikely to affect the manageability of the potential class.

## C.   Ascertainability

Both parties advance arguments concerning whether Wesley's proposed class is

ascertainable based on the proposed class definition.[226]   Several circuits recognize a requirement

under Rule 23 that members of a proposed class be ascertainable or "readily identifiable."[227]

The Tenth Circuit is not among the circuits that have explicitly addressed an ascertainability

requirement, though it has indicated "the lack of identifiability is a factor that may defeat

Rule 23(b)(3) classification."[228]

---

[223] Dkt. 64-23 (Peak Decl.) ¶¶ 16, 17, 21.

[224] Dkt. 64 at 17, 24.

[225] Dkt. 71 at 24 (quoting *Alpha Tech Pet, Inc. v. Lagasse, LLC*, No. 16-c-513 & 16-c-4321, 2017 WL 5069946, at * 8 (N.D. Ill Nov. 3, 2017)) (internal quotation marks omitted).

[226] Dkt. 64 at 18; Dkt. 71 at 24.

[227] *In re: Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2016 WL 5371856, at *2 (D. Kan. Sept. 26, 2016) (citing *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 995 (8th Cir. 2016) (citing cases)).

[228] *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) (noting "the lack of identifiability is a factor that may defeat Rule 23(b)(3) classification"); *but see Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978) (discussing ascertainability in the context of the numerosity requirement).

The scope of any ascertainability requirement is the subject of a circuit split, and district courts in this circuit have landed on both sides of the issue.[229]  The Third Circuit has adopted a so-called "stricter standard."[230]  This standard involves a two-prong inquiry, "requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."[231]  Under this standard, a mechanism is administratively feasible where "class members can be identified without extensive and individualized fact-finding or mini-trials."[232]  This prong does not require a plaintiff to "identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified."[233]  On the other end of the split, the Seventh Circuit favors a so-called "weaker" test requiring only "that the class definition satisfy the established meaning of ascertainability by defining classes clearly and with objective criteria."[234]  To meet this standard, a "class definition must not be too

---

[229] *Rodriguez v. Cascade Collections LLC*, No. 2:20-cv-00120-JNP-DBP, 2021 WL 1222147, at *15 (D. Utah Mar. 31, 2021) (concluding the "weaker" test is "the better approach" to determine ascertainability); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2020 WL 1180550, at *11 (D. Kan. Mar. 10, 2020) (predicting "that the Tenth Circuit, if confronted with this question, would decline to recognize ascertainability as a separate, unstated requirement of Rule 23 requiring certification movants to satisfy the more stringent ascertainability standard adopted by the Third Circuit"); *In re: Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2016 WL 5371856, at *3 (D. Kan. Sept. 26, 2016) (declining defendant's "invitation to apply [the Third Circuit's] standard—one not adopted by the Tenth Circuit—that would preclude certification without a showing that class members may be determined in an administratively feasible manner); *but see Banks v. Cent. Refrigerated Servs., Inc.*, No. 2:16-cv-356-DAK, 2017 WL 1683056, at *4 (D. Utah May 2, 2017) (citing *Abraham v. WPX Prod. Prods., LLC*, 317 F.R.D. 169, 254 (D.N.M. 2016)) (concluding "the majority of district courts in the Tenth Circuit appear to apply the Third Circuit's more stringent standard for ascertainability").

[230] *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015).

[231] *Id.* (internal quotation marks and citation omitted).

[232] *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (citation omitted).

[233] *Byrd*, 784 F.3d at 163 (internal quotation marks and citation omitted) (emphasis in original).

[234] *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015); *see also In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries."); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (citation omitted); *Sandusky Wellness Ctr.*, 821 F.3d at 996; *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017); *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021).

vague, the class must not be defined by subjective criteria, and the class must not be defined in terms of success on the merits."[235]

Rather than adopting either of these standards, several circuits have rejected any separate ascertainability standard under Rule 23, often concluding "[a] separate administrative feasibility prerequisite to class certification is not compatible with the language of Rule 23."[236]  In rejecting a separate ascertainability standard under Rule 23, the Ninth Circuit explained the rule's "enumerated criteria already address the policy concerns that have motivated some courts to adopt a separate administrative feasibility requirement, and do so without undermining the balance of interests struck by the Supreme Court, Congress, and the other contributors to the Rule."[237]

This court need not resolve this issue here because Wesley has demonstrated her class members are ascertainable under even the strict standards employed by some circuits.  Her class is defined by objective standards: noncustomers of Snap, who received a prerecorded voice message, on a telephone number assigned to a cellular service, after September 1, 2019.[238] Wesley has also described an efficient way to identify these potential class members using Snap's call logs as a starting point.[239]  Using Snap's call logs, reverse lookup procedures, and various other techniques described in Wesley's proposed notice plan, Wesley has demonstrated

---

[235] *In re: Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *2 (citing *Mullins*, 795 F.3d at 659–60).

[236] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017) (citing *See Sandusky Wellness Ctr.*, 821 F.3d at 995–96; *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015)) (purporting to join the Sixth, Seventh, and Eighth Circuits in rejecting a separate ascertainability standard under Rule 23).

[237] *Briseno*, 844 F.3d at 1123.

[238] *See* Dkt. 64 at 1.

[239] *Id.* at 22–23.

class members can be identified in an efficient way.[240]  Snap argues Wesley's proposed class is

not ascertainable because of individualized issues of consent, and whether or not the prerecorded

voice message "actually played."[241]  As previously addressed, neither of these concerns apply

given Wesley's narrowly tailored class definition and the common evidence available.  Wesley

has demonstrated her proposed class is ascertainable.

## CONCLUSION

For the reasons stated, Wesley has satisfied the requirements under Rule 23 and is

therefore entitled to certification of her proposed class.  Accordingly, the Motion is GRANTED

as follows:

The court CERTIFIES and DEFINES the following class:

> All persons throughout the United States (1) to whom Snap Finance LLC placed,
> or caused to be placed, a call, (2) directed to a number assigned to a cellular
> telephone service, but not assigned to a current or former Snap Finance LLC
> accountholder, (3) in connection with which Snap Finance LLC used an artificial
> or prerecorded voice, (4) from September 1, 2019 through September 21, 2021.

The court APPOINTS Aaron D. Radbil, Michael L. Greenwald, and Alexander D. Kruzyk as

class counsel.  Brandi Wesley is APPOINTED as the class representative.

It is further ORDERED that the parties meet and confer concerning the form of the notice

to be sent to the class members pursuant to Fed. R. Civ. P. 23(c)(2).  The parties shall provide the

court with a stipulated notice or the parties' proposed notices, including supporting memoranda,

no later than thirty (30) days after entry of this Order.

---

[240] *Id.* at 24.

[241] Dkt. 71 at 25.

SO ORDERED this 21st day of September 2021.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge