UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRANDI WESLEY, *on behalf of herself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SNAP FINANCE, LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER APPROVING PLAINTIFF'S RULE 23(C)(2) CLASS NOTICE PROGRAM**<br><br>Civil Action No. 2:20-cv-00148-RJS-JCB<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |
| SNAP FINANCE, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>DERRICK DEON JACKSON, JR., a/k/a DERRICK JOHNSON,<br><br>Third-Party Defendant. | |

Plaintiff Brandi Wesley initiated this action against Defendant Snap Finance, LLC (Snap) seeking class-wide relief under the Telephone Consumer Protection Act of 1991 (TCPA). The TCPA prohibits placing certain calls to a number assigned to a cellular telephone service using an automatic telephone dialing system and/or an artificial or prerecorded voice to deliver a message without consent.[1]

On September 21, 2021, the court granted Wesley's Motion to Certify a Class.[2] Now

---

[1] 47 U.S.C. § 227(b)(1)(A)(iii).

[2] Dkt. 92.

1

before the court are the parties' competing proposed class notice programs.[3] For the reasons described herein, the court finds Wesley's proposed notice program sufficient under Federal Rule of Civil Procedure 23 and APPROVES it.[4] Wesley's Motion for Leave to File a Reply is denied as MOOT.[5]

## BACKGROUND

On September 21, 2021, the court certified and defined the following class:

> All persons throughout the Unites States (1) to whom Snap Finance LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance LLC accountholder, (3) in connection with which Snap Finance LLC used an artificial or prerecorded voice, (4) from September 1, 2019 through September 21, 2021.[6]

The court further ordered the parties to meet and confer and provide the court with their stipulated class notice or with the parties' proposed notices and supporting memoranda.[7]

Pursuant to that order, Wesley moves for approval of a class notice program, including proposed website notice, postcard notice, social media notice, and press release.[8] Snap also submits its own proposed class notice[9] and objects to Wesley's proposal[10] on the basis that class notice should require recipients to submit a return affidavit, averring that they meet the class definition, to preserve their right to remain potential class members. Wesley likewise objects to Snap's proposed class notice on the basis that such an affidavit is inappropriate to include with

---

[3] Dkt. 99, *Plaintiff's Memorandum in Support of her Proposed Rule 23(c)(2) Notice*; Dkt. 100, *Defendant's Memorandum in Support of its Proposed Notice*.

[4] Dkt. 99.

[5] Dkt. 110.

[6] Dkt. 92 at 38.

[7] *Id.*

[8] Dkt. 99.

[9] Dkt. 100.

[10] Dkt. 108.

Rule 23(c)(2) class notice.[11]  Having considered the parties' briefing, the court finds Wesley's proposed notice program sufficient under Federal Rule of Civil Procedure 23 and rejects Snap's argument for requiring recipients to submit affidavits at this stage in the proceedings.

## ANALYSIS

### 1. Wesley's Proposed Notice Satisfies the Requirements of Rule 23.

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[12]  Notice must include, in clear and concise terms:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).[13]

As an initial matter, Wesley's proposed notice meets the listed requirements of Rule 23(c)(2)(B).  Wesley's notice sets forth the required information in clear and concise language.[14]  Snap does not dispute that Wesley's proposed notice includes the information required under Rule 23(c)(2)(B).[15]

---

[11] Dkt. 109.

[12] Fed. R. Civ. P 23(c)(2)(B).

[13] *Id.*

[14] *See* Dkt. 99-1, *Plaintiff's Proposed Website Notice*; Dkt. 99-2, *Plaintiff's Proposed Postcard Notice* (directing recipients to the website notice for more information); Dkt. 99-3, *Plaintiff's Proposed Social Media Notice* (same); Dkt. 99-4, *Plaintiff's Proposed Press Release* (same).

[15] *See* Dkt. 100; Dkt. 109.  Snap briefly expresses concern that Wesley's proposed notice "would mislead recipients into believing that, unless they opted-out, they were members of the class." Dkt. 100 at 7.  However, this concern is counter to the clear language of Wesley's proposed notice.  *See, e.g.,* Dkt 99-1 at 2 ("Receiving notice of this class action, however, does not necessarily mean that you are a class member or that you are entitled to compensation); *Id.* at 6 ("Receiving a postcard does not necessarily mean that you are a class member, nor does not receiving a postcard necessarily mean that you are not a class member."); Dkt. 99-2 at 2 ("You received this notice because you were identified as a potential class member.  Receiving this notice does not necessarily mean you are a class member or that you are entitled to compensation.").

Furthermore, Wesley's notice plan is reasonable under the circumstances and directs "individual notice to all members who can be identified through reasonable effort."[16] Wesley's notice plan begins with Snap's "wrong number" list, confirms whether particular numbers are associated with cellular telephone services, de-duplicates the list to ensure each number appears only once, and submits the list to reverse look-up procedures to obtain the name and address associated with each number.[17]

Snap argues that, due to the overinclusive nature of its "wrong number" list, Wesley's notice plan would include a number of recipients who are not genuine members of the class, and "the effort undertaken to actually identify class members is clearly not reasonable under the circumstances."[18] Wesley responds that Snap "conflates Rule 23(c)(2)(B)'s requirement to deliver the 'best notice that is practicable under the circumstances,' with class membership."[19] The purpose of 23(c)(2) notice is not "to identify *bona fide* class members[,]" but "is to make class members aware that unless they exclude themselves from the class they are automatically bound by any subsequent judgment that becomes applicable to the class."[20] Wesley asserts that "it is not only typical, but expected, that non-class members will receive notice" and that receipt of notice does not transform a non-class member into a class member.[21] "[A] non-class member

---

[16] Fed. R. Civ. P. 23(c)(2)(B).

[17] *See* Dkt. 64-23, *Declaration of Carla Peak* at 8–9; *see also* Dkt. 92, *Order Certifying the Class* at 34–35; Dkt. 100 at 5.

[18] Dkt. 100 at 6. Snap also argues that requiring class members to submit a return affidavit would "ensur[e] notice is provided 'to all members who can be identified through reasonable effort,' in compliance with Rule 23(c)(2)." *Id.* at 7. But this argument is circular because Snap's proposed submission of affidavits necessarily follows dissemination of notice and therefore cannot inform the process of determining who receives notice.

[19] Dkt. 109 at 10 (quoting Fed. R. Civ. P 23(c)(2)(B)).

[20] *Id.* at 2.

[21] *Id.* at 10.

4

who receives Rule 23(c)(2) notice, and 'does nothing,' still is not a class member."[22]

The court agrees with Wesley. The purpose of notice under Rule 23(c)(2) is to protect the due process interests of the absentee individuals and to inform them of the right to be excluded, the right to enter an appearance and be heard, and the binding nature of any ensuing judgment.[23] Notice must therefore be reasonably calculated to reach the interested individuals and inform them of the pending action and their related rights.[24] Rule 23's charge that notice be the best practicable under the circumstances and direct "individual notice to all members who can be identified through reasonable effort"[25] is concerned more with whether notice is likely to reach its identifiable target audience than with whether it may include some for which its message is inapplicable.[26] This priority is reinforced by the recognition that, while individual notice is the ideal, "due process does not always require it" such as when it is "impossible to identify some class members for purposes of actual notice."[27] Where individual notice is not possible, the best practicable notice may be through third parties, advertising, or public posting.[28] Such broadcasted forms of notice will inevitably reach individuals not members of the certified class.

---

[22] *Id.*

[23] *See* Fed. R. Civ. P. 23 Advisory Committee's note to 1966 amendment, Subdivision (c)(2); *see also Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 173–75 (1974).

[24] *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Eisen*, 417 U.S. 173–75.

[25] Fed. R. Civ. P 23(c)(2)(B).

[26] *See Eisen*, 417 U.S. 174–75 ("Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort."); *Id.* at 174 ("But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.") (quoting *Mullane*, 339 U.S. 315 (holding publication notice fails to satisfy due process when the names and address of intended recipients were known)).

[27] *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012)).

[28] *See, e.g., Mullins*, 795 F.3d 665.

Wesley's proposed notice and notice plan is reasonably calculated to deliver individual notice to those potential class members who are identifiable through reasonable means—that is, through reference to Snap's "wrong number" list.  That the "wrong number" list is overinclusive, and therefore individual notice will include some non-class members, does not violate the requirements of Rule 23(c)(2)(B) nor interfere with its purpose.

Because it directs the best practicable, individual notice to all members who can be identified through reasonable effort and includes all the requisite information to inform potential members of the action and their related rights, Wesley's proposed notice satisfies the requirements of Rule 23(c)(2).

### 2. Requiring submission of a return affidavit is neither necessary nor appropriate at this stage of proceedings.

Snap's primary response to Wesley's proposed notice is that notice should include instruction that recipients, who "choose to participate as [] potential class member[s]," must complete and return the included affidavit "to preserve the possibility of receiving money from this class action."[29]  Recipients who do nothing "will still be included in the class, but [] will not receive any benefit from th[e] case."[30]  Snap argues requiring submission of a return affidavit is consistent with Rule 23 and the proceedings in this case, necessary to the protection of Snap's due process rights, and not harmful to putative class members.[31]

Wesley, in turn, argues that neither the text nor the purpose of Rule 23(c)(2) supports requiring submission of return affidavits.[32]  Rather than requiring return affidavits at this stage in proceedings, Wesley avers that determining individual's class membership is better suited to the

---

[29] Dkt. 100-1, *Defendant's Proposed Long Form Notice* at 3.

[30] *Id.*

[31] *See* Dkt. 100 at 5–8; Dkt. 108 at 3–9.

[32] Dkt. 99 at 6–9; Dkt 109 at 2–3.

6

claims administration process and that Snap's due process rights may likewise be protected through its participation in that process.[33] Lastly, Wesley asserts that requiring return affidavits would be harmful to class members and persuasive precedent from other TCPA class actions weighs against requiring affidavits at this stage.[34] The court agrees.

### a. Requiring submission of affidavits at this stage in proceedings is not justified by Rule 23(c)(2) or the circumstances of the case.

Rule 23(c)(2) makes no mention of affidavits or their equivalent in discussing the substantive requirements of class notice.[35] Nonetheless, Snap argues this omission "does not preclude the inclusion of an affidavit or some other demonstrable verification mechanism that would enable actual class members to self-identify[.]"[36] Accepting that Rule 23(c)(2) neither requires nor forbids Snap's suggested affidavits,[37] it does not follow that such affidavits are needed or appropriate here.

Snap also argues that "[b]ecause the class was certified on Plaintiff's representation that individualized issues could be overcome by affidavits in the class notice process, the [c]ourt should require those affidavits."[38] This argument misapprehends the court's certification order and is thus unavailing.

Contrary to Snap's assertion, the court did not certify the class based on Wesley's representations regarding putative class members' submission of affidavits. Rather, the class

---

[33] Dkt. 99 at 9–11; Dkt. 109 at 2–8.

[34] Dkt. 99 at 9–14, Dkt. 109 at 11.

[35] *See* Fed. R. Civ. P. 23(c)(2); *see also* Dkt. 99 at 6–7.

[36] Dkt. 108 at 3.

[37] *See In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 410 (3d Cir. 2015) ("Rule 23(d) vests in the Court substantial discretion to enter orders, subsequent to the Order Certifying the Class that will follow, to manage the class."); Fed. R. Civ. P. 23(d).

[38] Dkt. 108 at 4.

7

was certified based, in part, on Wesley's "narrowly tailored class definition" which limited the class to noncustomers of Snap.[39] Certification was not reliant on the submission of affidavits in response to recipients' initial notice of the pending action.

Further, it appears that Snap misconstrues Wesley's representations concerning potential class members' submission of affidavits.[40] Viewed in context, Wesley's discussion of affidavits makes no representation that such affidavits would be a part of the initial class notice under Rule 23(c)(2)(B), but rather that affidavits or similar forms of attestation would be utilized to sort *bona fide* class members from potential class members "should there ultimately be a judgment in favor of the class[.]"[41] Additionally, at this stage the court has only provided a preliminary certification of the class, which may be subject to change as the case develops.[42] Viewed in whole, neither the court's certification order nor the posture of this case compels the inclusion of

---

[39] *See* Dkt. 92 at 38 (referring to cell phone numbers "not assigned to a current or former Snap Finance LLC accountholder" as part of the class definition); *see also, e.g., Id.* at 17–18, 23–24, 32, 35, 38 (referencing Wesley's narrowly tailored class definition, limited to noncustomers of Snap, as enforcing the court's holding on the issues of commonality, typicality, predominance, superiority, and ascertainably under Rule 23).

[40] *See* Dkt. 108 at 2–4.

[41] Dkt. 64, *Plaintiff's Motion to Certify the Class* at 30. *See also, e.g., Id.* ("[F]or example, class members will be able to identify themselves by way of a sworn statement made in connection with a claim form should the class prevail on the merits."); Dkt. 88, *Plaintiff's Sur-Reply in Support of Class Certification* at 2 ("[S]elf-identification is a method of identifying—after a class is certified—persons who meet the class definition and who therefore can partake in any ultimate judgment, should one ensue.  Thus, there is no requirement or reason to identify *bona fide* class members now, nor will there be unless and until Ms. Wesley obtains a judgment in favor of the certified class."); Dkt. 88 at 4–5 n.2 ("[O]nce a defendant's liability is established, the court may be justified in ordering a second notice sent pursuant to Rule 23(d)(2) requiring class members to file statement[s] of their claims. . . . And simplified proof of claim procedures involving affidavits or documentary evidence, associated with class settlements, can be used in the disputed claims context, by affording the defendants a fair opportunity to validate or contest individual claims in a reasonable manner under the circumstances.") (internal citations and quotation marks omitted).

[42] *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also, e.g., Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014) ("Rule 23(c)(1)(C) requires courts to reassess . . . class rulings as the case develops, and to ensure continued compliance with Rule 23's requirements.") (internal citation and quotation marks omitted); *Ms. L. v. U.S. Immigration and Customs Enforcement*, 330 F.R.D. 284, 292 (S.D. Cal. 2019) ("Supreme Court precedent and Rule 23(c)(1)(C) [] give courts broad discretion to alter or amend a class definition considering subsequent developments in a case.") (citing *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

return affidavits with this initial Rule 23(c)(2)(B) class notice.

### b. Requiring submission of affidavits at this stage is not necessary to the protection of Defendant's due process rights.

Next, Snap argues that "requiring self-identification now is . . . crucial to preserving Snap's due process right to challenge the claims or putative class members."[43] Wesley does not dispute the exercise of Snap's due process right but contests its timing.[44] Wesley avers that "determination of class membership and protecting the [D]efendant's due process rights can be done during the claims administration process."[45] The court agrees with Wesley.

Snap indisputably has a due process right "to raise individual challenges and defenses to claims."[46] Accordingly, "[f]orcing [Snap] to accept as true absent persons' declarations that they are members of the class, without further indica of reliability, would have serious due process implications."[47] However, individual challenges to the claims or identities of putative class members are best made if or when they come forward to file claims for damages.[48]

Snap will have the opportunity to "challenge whether individual members actually meet

---

[43] Dkt. 108 at 6.

[44] Dkt. 99 at 9–11.

[45] *Id.* at 9.

[46] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017) (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013)); *see also Mullins*, 795 F.3d 669 ("A defendant has a due process right to challenge the plaintiffs' evidence at any stage of the case, including the claims or damages stage.").

[47] *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012); *see also Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015) ("[A]llowing class members to self-identify without affording defendants the opportunity to challenge class membership provides inadequate procedural protection to defendants and implicates their due process rights.") (internal citation and quotation marks omitted).

[48] *See Briseno*, 844 F.3d at 1131 ("Defendants will have [] opportunities to individually challenge the claims of absent class members if and when they file claims for damages."); *Mullins*, 795 F.3d at 670 ("The due process question is . . . whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward."); *Victorino v. FCA US LLC*, No. 16-cv-1617, 2020 WL 2306609, *4 (S.D. Cal. May 8, 2020) ("Defendant may be given the opportunity during the claims administration process to challenge any claims[.]"); *Krakauer v. Dish Network, LLC*, NO. 1:14-cv-333, 2017 WL 3206324, *5 (M.D. N.C. July 27, 2017) ("Whether a claimant is a class member is a question that can be more appropriately, fairly, and efficiently resolved through a claims administration process as authorized by Rule 23.").

the criteria for class membership"[49]—if or when there is any judgment concerning the absentee class members and such members come forward. Snap argues that individualized issues concerning consent would make identifying *bona fide* class members unmanageable as part of a post-judgment claims process, particularly where Snap cannot cross-check affiant's statements against an agreed upon list of non-customers or list of individuals who did not provide consent.[50] This argument has two flaws.

First, in certifying the class, the court held that, "because Wesley's [] class definition includes only people who were not customers of Snap, individual issues of consent are unlikely to affect the manageability of the [] class."[51] Snap now argues that "[n]ot being a customer of Snap is not coterminous with lack of consent" and "[a] non-customer is capable of providing consent or may be bound by the consent provided by his or her agent." However, this assertion is undercut by Snap's prior arguments aligning the question of consent with the question of whether a dialed number belonged to a Snap customer.[52] Snap provides no explanation to show that noncustomers may nonetheless have provided prior express consent.

Second, Snap's proposed return affidavit does not request attestation of any information pertaining to a noncustomer providing express consent.[53] Snap's proposed affidavit requires

---

[49] Dkt. 108 at 7.

[50] *Id.* at 7–8.

[51] Dkt. 92 at 35.

[52] *See* Dkt. 71, *Defendant's Opposition to Plaintiff's Motion for Class Certification*, at 11 n.3 ("In the debt collection industry 'wrong number' oftentimes does not mean non-consent because many customers tell agents they have reached the wrong number, though the correct number was called, as a way to avoid further debt collection.") (quoting *Sliwa v. Bright House Networks, LLC*, 444 F.R.D. 255, 271–72 (M.D. Fla. 2019)); *Id.* at 12 ("Ms. Daley confirmed that for 333 of 500 sample designated "wrong numbers" the number dialed returned an associated name that was the same name as the customer Snap was trying to reach and for whom Snap had consent to contact[.]"); *Id.* at 23 ("Snap has shown that a "wrong number" designation does not, in fact, indicate that the number dialed did not belong to a Snap customer at the time it was dialed.").

[53] *See* Dkt. 100-1 at 8.

recipients to identify their cell phone number and certify that: (1) they received one or more voice messages on their cell phone between September 1, 2019 and September 21, 2021 from Snap that used a prerecorded or automated voice; (2) they were not a customer of Snap; (3) they were the customary user and/or subscriber for the listed cell phone number; and (4) no other customary user and/or subscriber for the listed phone number was a customer of Snap.[54] None of the requested information would show how a noncustomer of Snap would nonetheless have provided Snap with prior express consent to call them on their cell phone using an artificial or prerecorded voice.

Snap undoubtably has a due process right to "challenge [absentees'] claim[s] to class membership and to contest the amount owed each claimant during the claims administration process."[55] Because the certified class is limited to noncustomers of Snap, and Snap has not shown how individual issues of consent would predominate or render unmanageable such a class,[56] identifying individual absentees is not necessary at this juncture. Snap's proposal that potential class members file affidavits asserting their membership in the class is premature.

### c. Requiring submission of affidavits at this stage would harm putative class members.

Lastly, Wesley contends that requiring the submission of return affidavits at this stage would be harmful to putative class members and would functionally add an opt-in requirement, contrary to class certification under Rule 23(b)(3).[57] Snap replies that requiring affidavits in response to class notice would not harm potential class members and would not convert the

---

[54] *Id.*

[55] *Mullins*, 795 F.3d at 671.

[56] The court has already addressed the questions of predominance and manageability—issues going to Rule 23(b)(3) class certification rather than Rule 23(c)(2)(B) class notice—as they relate to individualized issues of consent. *See* Dkt. 92 at 31–32, 34–35.

[57] Dkt. 99 at 7–12.

11

action to an "opt-in" class.[58] The court agrees with Wesley—requiring notice recipients to return affidavits averring their class membership in order to retain the right to receive any benefit from the action, at this stage in proceedings, would create an unjustified barrier to absentee class members' potential recovery.

Judgment in a Rule 23 class action, whether favorable or not, is binding on all class members who have not requested exclusion.[59] As previously discussed, the purpose of Rule 23(c)(2) notice—prior to there being a determination on the merits of the class action—is to inform absentee class members of the pending action, the binding nature of any ensuing judgment, and their right to request exclusion.[60] Snap's proposed requirement of return affidavits would not advance Rule 23's purpose, but rather would artificially and prematurely restrict Snap's potential liability, and class members potential recovery, in advance of any determination on the merits.[61]

Under Snap's proposal, notice recipients would have three options: (1) request exclusion, (2) submit a return affidavit, or (3) do nothing.[62] Recipients who submit the return affidavit

---

[58] Dkt. 108 at 4–6; Dkt 100 at 7.

[59] *See Eisen*, 417 U.S. 176 ("As the Advisory Committee's Note explained, [] Rule [23] was intended to insure that the judgment, whether favorable or not, would bind all class members who did not request exclusion from the suit[.]"); Fed. R. Civ. P. 23 Advisory Committee's note to 1966 amendment, Subdivision (c)(3).

[60] *See* Fed. R. Civ. P. 23 Advisory Committee's note to 1966 amendment, Subdivision (c)(2); *Eisen*, 417 U.S. 173–75.

[61] *See* Dkt. 99 at 12. *See, e.g., Law v. Nat'l Collegiate Athletic Ass'n*, 5 F. Supp. 2d 921, 932 (D. Kan. 1998) ("In circumstances such as these, the claims of absent class members in opt-out class actions cannot properly be dismissed for failure to return a questionnaire. To require them to complete and return a questionnaire, on the condition that failure to do so would result in dismissal from the lawsuit, would have the prohibited effect of requiring them to opt into the class and violate the opt-out policy of Rule 23."); *Korn v. Fanchard Corp.*, 50 F.R.D. 57, 60 (S.D. N.Y. 1970) ("[T]here appears to be a fundamental inconsistency in providing, on the one hand, that a member who fails to request exclusion shall be included in the class and, on the other hand, that a member who fails to file a proof of claim shall be excluded from any recovery. . . . Unless and until liability to the class is established or seems reasonably certain, therefore, members should not be barred for failure to track down this information [pertaining to class membership], even though such a requirement might later be a reasonable condition to their participation in any recovery, assuming liability is established.").

[62] *See* Dkt. 100-1 at 3.

would be bound by any ensuing judgment, give up their right to file an individual action, and retain the potential to receive money resulting from settlement or judgment in favor of the class.[63] Recipients who do nothing would likewise be bound by any ensuing judgment and give up their right to file an individual action, but would not be eligible to receive any benefit from settlement or judgment in favor of the class.[64] Thus, Snap's proposed requirement would limit its potential liability to those *bona fide* class members who submitted a return affidavit prior to there being any adjudication on the merits. Meanwhile, those *bona fide* class members who do nothing would still be bound by any judgment against their interests but receive none of the benefits from judgment or settlement in their favor. While this dichotomy is certainly the eventual outcome—as individual class members will have to be identified and take positive action to receive any monetary benefit from settlement or judgment—at this stage such a restriction is unnecessary.

      This conclusion is reinforced by the cases Snap highlights in arguing that other similar class actions have required notice recipients to submit return affidavits. In neither of the cases Snap cites were return affidavits required prior to any adjudication on the merits. First, in discussing *Fager v. CenturyLink Communications, LLC*, Snap fails to register the significance of the fact that it was a notice of proposed settlement being sent to potential class members and requiring recipients to submit a claim form to be eligible for payment.[65] In *Fager*, an objector to class settlement asserted the form of notice "did not satisfy due process, primarily because a failure to respond would result in the extinguishment of a real-property interest[.]"[66] The Tenth

---

[63] *See Id.*

[64] *See Id.*

[65] 854 F.3d 1167, 1168, 1172 (10th Cir. 2016); *see also* Dkt. 109 at 6 n.3.

[66] *Fager*, 854 F.3d 1172.

13

Circuit rejected the objector's argument, stating in part that "the structure of the settlement . . . is precisely what one would expect as a resolution of the claims[.]"[67] In contrast to *Fager*, the instant notice in this class action is not to inform potential class members of a settlement or judgment. Rather, the proposed notice is for the purpose of informing potential class members of the pendency of the action and their related rights. Currently, even *bona fide* class members have no right to collect payment as there has been no settlement or judgment.

Snap's discussion of *Rhodes v. National Collection Systems, Inc.*, is likewise unpersuasive.[68] Snap is correct in noting that the court in *Rhodes* rejected the plaintiff's proposed notice which "contemplate[d] no process for vetting the claims of putative class members to membership in the class prior to trial."[69] However, Snap once again overlooks the importance of the procedural posture.[70] At the time for notice to be disseminated to potential class members in *Rhodes*, the plaintiff had already been granted summary judgment "as to liability on all claims" and the only remaining issue for trial was a determination of damages.[71] Therefore, the time was right for absentee class members to come forward as the remaining calculation of damages required "evidence of the number of persons properly included as members of the class and the total number of offending communications with them."[72] In contrast, this court has made no determination of Snap's liability and is not at the stage of

---

[67] *Id.*

[68] No. 15-cv-02049, 2017 WL 4334079 (D. Colo. Apr. 28, 2017).

[69] *Id.* at *1; *see* Dkt. 100 at 7–8.

[70] *See* Dkt. 109 at 6–7 n.4.

[71] *Rhodes v. Nat'l Collection Syss., Inc.*, No. 15-cv-02049, 2016 WL 6472112, at *5–6 (D. Colo. Oct. 31, 2016) ("Damages on all claims [shall] be determined at trial after ruling on the Motion for Class Certification and Appointment of Class Counsel.") *report and recommendation adopted* 2016 WL 9738594 (D. Colo. Dec. 19, 2016).

[72] *Rhodes*, 2017 WL 4334079, at *2; *see also Mullins*, 795 F.3d at 670–71 (discussing defendant's due process interests "where the total amount of damages cannot be determined in the aggregate, but there is a common method of determining individual damages.").

determining damages.

It is inevitable and necessary that absentee class members will have to be identified and take affirmative steps to receive any payment from a class wide settlement or judgment. But, at this stage, requiring notice recipients to submit return affidavits attesting to their class membership would harm putative class members by creating an unjustified barrier to absentee members' potential recovery.

## CONCLUSION

The court is satisfied that Wesley's proposed class notice provides sufficient information about the case "to enable class members to make an informed decision about their participation,"[73] and otherwise satisfies the requirements of Rule 23.

Furthermore, the court rejects Snap's contention that notice at this stage in the proceedings should require recipients to submit a return affidavit, attesting to their class membership, to remain eligible to receive any benefit from the class. Neither Rule 23 nor the circumstances of this case evidence the utility of requiring return affidavits at this juncture. Furthermore, the court is satisfied that Snap will be able to challenge the claims of putative class members, as is its right, when absentee class members come forward as part of the determination of damages or the claims administration process. Additionally, apart from being unnecessary to the protection of Snap's due process rights, requiring submission of return affidavits at this stage in proceedings would be harmful to putative class members and erect an artificial barrier uncalled for by Rule 23 or the pertinent case law.

---

[73] MANUAL FOR COMPLEX LITIGATION (4th) § 21.311.

For the foregoing reasons, the court GRANTS Wesley's Proposed Rule 23(c)(2) Notice[74] and hereby APPROVES the proposed class notices, attached as Exhibits A, B, C, and D to her Memorandum in Support of her Proposed Notice.[75]

Considering the parties Joint Status Report[76] evidencing their intent to submit the instant matter to mediation, the court FURTHER ORDERS execution of Rule 23(c)(2) Notice suspended pending the parties' mediation. The parties are ORDERED to update the court once they have agreed upon a mediator and have confirmed a mediation date and to submit a joint status report within seven (7) days of completing mediation.

DATED this 18th day of April, 2022.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[74] Dkt. 99.

[75] Dkts. 99-1, 99-2, 99-3, 99-4.

[76] Dkt. 113.