Aaron D. Radbil (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
aradbil@gdrlawfirm.com

Michael L. Greenwald (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Phone: (561) 826-5477
mgreenwald@gdrlawfirm.com

Jared D. Scott (Bar No. 15066)
ANDERSON & KARRENBERG, P.C.
50 West Broadway, Suite 700
Salt Lake City, Utah 84101
Phone: (801) 534-1700
jscott@aklawfirm.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| BRANDI WESLEY, *on behalf of herself and others similarly situated*,<br><br>        Plaintiff,<br><br>v.<br><br>SNAP FINANCE, LLC,<br><br>        Defendant. | **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Civil Action No. 2:20-cv-00148-RJS-JCB<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |
| SNAP FINANCE, LLC,<br><br>        Third-Party Plaintiff,<br><br>v.<br><br>DERRICK DEON JACKSON, JR., a/k/a DERRICK JOHNSON,<br><br>        Third-Party Defendant. | |

## Introduction

Brandi Wesley ("Plaintiff") filed this class action against Snap Finance, LLC ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* ECF No. 1. Over a year and a half later, this Court granted, in part, Plaintiff's motion for class certification and appointment of class counsel, and certified the following class: "All persons throughout the United States (1) to whom Snap Finance LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance LLC accountholder, (3) in connection with which Snap Finance LLC used an artificial or prerecorded voice, (4) from September 1, 2019 through September 21, 2021." *See* ECF No. 92. In turn, the Tenth Circuit Court of Appeals denied Defendant's petition for permission pursuant to Fed. R. Civ. P. 23(f) to appeal this Court's order certifying the class. *See* ECF No. 104. After that, this Court approved Plaintiff's Rule 23(c)(2) class notice plan. *See* ECF No. 114.

Then, following over two years of vigorously contested litigation, and as a result of extensive arm's-length negotiations—in part before the Hon. Steven M. Gold (Ret.), acting as a mediator—Plaintiff and Defendant agreed to resolve this matter on behalf of a settlement class. In short, the parties' agreement calls for the creation of a non-reversionary, all-cash common fund in the amount of $5 million, from which participating settlement class members will receive substantial payments ("Settlement"). Plaintiff and her counsel firmly believe the Settlement is fair, reasonable, adequate, and in the best interest of settlement class members. Accordingly, Plaintiff and her counsel request that this Court enter an order preliminarily approving the Settlement. Defendant does not oppose Plaintiff's request.

## Summary of the Settlement

The parties agreed to resolve this matter on behalf of the following settlement class

("Settlement Class"):

> All persons throughout the United States (1) to whom Snap Finance, LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance, LLC accountholder, (3) in connection with which Snap Finance, LLC used an artificial or prerecorded voice, (4) from September 1, 2019 through June 14, 2022.

*See* Settlement Agreement, ECF No. 120-1 at 4.

The Settlement Class differs from the class this Court previously certified only in terms of duration. That is, while the class this Court previously certified runs through September 21, 2021, *see* ECF No. 92 at 38, the Settlement class runs through June 14, 2022. *See* ECF No. 120-1 at 4.

To compensate Settlement Class members, Defendant will create a non-reversionary, all-cash common fund in the amount of $5 million ("Settlement Fund"). Paid from the Settlement Fund will be (i) compensation to participating Settlement Class members, (ii) the cost of notice to potential Settlement Class members, and claims administration, (iii) litigation costs and expenses, for which Plaintiff's counsel will petition this Court, (iv) reasonable attorneys' fees, calculated as a percentage of the Settlement Fund, for which Plaintiff's counsel will petition this Court, and (iv) and incentive award to Plaintiff, for which Plaintiff will petition this Court (collectively, "Expenses").

Each Settlement Class member who submits a valid, approved claim will be entitled to a *pro rata* share of the Settlement Fund after deducting the Expenses. Any Settlement Class member who wishes to exclude himself or herself from the Settlement can submit a request for exclusion. And any Settlement Class member who wishes to object to the Settlement can submit an objection.

Upon this Court's entry of a final judgment, Plaintiff and each non-excluded Settlement Class member will release and forever discharge certain claims they have against Defendant under the TCPA.

**Argument**

**I.      The Settlement Class meets all requirements for certification under Rule 23.**

This Court previously certified a class in this matter identical in all respects to the Settlement Class but for duration. In other words, this Court found a class that runs through September 21, 2021, but is otherwise identical to the Settlement Class—which runs through June 14, 2022—met all requirements for certification under Rule 23. *See* ECF No. 92. For the same reasons, the Settlement Class meets all requirements for certification under Rule 23, and Plaintiff asks this Court to certify the Settlement Class for settlement purposes.

**II.     The Settlement is fair, reasonable, and adequate, under Rule 23(e).**

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice has been issued, the court must then hold a final fairness hearing to determine whether the proposed settlement is fair, reasonable, and adequate. *See* Manual For Complex Litigation § 21.633-34; Newberg, § 11.25.

Considering as much, preliminary approval requires only that a court evaluate whether the proposed settlement was negotiated at arm's length and is within the range of possible litigation

outcomes such that "probable cause" exists to disseminate notice and begin the formal fairness process. *See* Manual For Complex Litigation § 21.632-33; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing.").

No matter, and with the understanding that a full fairness determination is not necessary at this preliminary approval stage, the Tenth Circuit identified four factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representative and class counsel have adequately represented settlement class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the Settlement is fundamentally fair, reasonable, and adequate.

**A. The Settlement was fairly and honestly negotiated.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *5 (D.N.M. Apr. 9, 2021) (citing 2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011)); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-

482-VAP(OP), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. CIV.A. 08-4149 (JLL), 2009 WL 3345762, at *5 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd,* 423 F. App'x 131 (3d Cir. 2011) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Lucas*, 234 F.R.D. at 693 ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

Here, the parties reached an agreement to resolve this matter only after mediating Plaintiff's claims with the Hon. Steven M. Gold (Ret.). Noteworthy, Judge Gold served for twenty-eight years as a United States magistrate judge for the Eastern District of New York, including nine years as the court's chief magistrate judge. And during his nearly three decades as a federal magistrate judge, Judge Gold presided over thousands of settlement conferences, including those in connection with consumer class actions. *See* https://www.jamsadr.com/gold/(last visited June 24, 2022). Accordingly, the Settlement is not the product of collusion, but rather the result of fair, honest, arm's-length negotiations facilitated by an experienced mediator.

**B. Questions of law and fact exist, placing the ultimate outcome of this matter in doubt.**

Existing questions of law and fact weigh "in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after

long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009); *see also McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) ("The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

Here, merits discovery has not yet begun. *See* ECF No. 36. So without more, issues of fact necessarily remain open. No matter, Defendant has expressed its intent to move for summary judgment following merits discovery. And, in the event this matter proceeds to trial, Defendant has outlined its plan to conduct months-long examinations to challenge each Settlement Class member's claims.

As well, Defendant continues to maintain it will ultimately decertify the class this Court previously certified. And in the alternative, Defendant maintains its sentiment that it will prevail on appeal in connection with its contention that this Court should not have certified the class it did.

At bottom, questions of law and fact exist, which place the ultimate outcome of this matter in doubt.

**C. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg On Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial[.]" *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). And this is particularly true in the context of a class action. *See Wal-Mart Stores, Inc.*, 396 F.3d at 116 ("We are mindful of the strong judicial policy

in favor of settlements, particularly in the class action context."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits[.]").

Here, the Settlement Fund will be non-reversionary, all-cash, and amounts to $5 million. Given, therefore, that "Defendant believes that there are substantially fewer Settlement Class Members than the approximately 64,845 unique cellular telephone numbers identified," ECF No. 120-1 at 4, the raw, per-potential Settlement Class member value of the Settlement is substantially greater than $77 ($5,000,000 / 64,845 = $77.10). And this exceeds by multiples the raw, per-potential settlement class member value of many analogous TCPA class action settlements. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per potential class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ($5.55 per potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member);

*Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

The raw, per-potential Settlement Class member value of the Settlement also exceeds the value of settlements in other TCPA class actions resolved after courts certified "wrong number" classes. *See, e.g., Knapper v. Cox Commc'ns, Inc.*, No. 2:17-cv-00913-SPL, ECF No. 115 (D. Ariz. July 18, 2019) ($10,750,000 to compensate a class estimated to include 140,000 persons, or just under $77 per estimated class member); *Johnson v. Navient Sols., Inc.*, No. 21:15-cv-00716-LJM-MJD, ECF No. 175 (N.D. Ind. Jul. 26, 2017) ($19,744,650 to compensate a class that included 429,893 unique telephone numbers with wrong number codes, or just under $46 per potential class member).

As well, the settlement is expected to greatly exceed, on a per-claimant recovery basis, other recently approved TCPA class action settlements. Indeed, Plaintiff's counsel estimates—based on historical claims rates—that after deducting the Expenses participating Settlement Class members who submit valid claims will receive between $300 and $1,000 each. This would greatly surpass comparable figures in other approved TCPA class settlements. *See, e.g., Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v.*

*Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101).

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

What's more, the Settlement provides class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the Settlement, Settlement Class members will receive money they otherwise would have likely never pursued on their own.

In the end, the Settlement constitutes an objectively favorable result for Settlement Class members, and outweighs the mere possibility of future relief after protracted and expensive litigation. *Accord Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation.").

**D. The judgment of the parties is that the Settlement is fair and reasonable.**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight."

9

*Marcus v. Kan. Dep't of Revenue,* 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, Plaintiff's counsel, who are highly experienced in class action litigation, particularly in cases under the TCPA, *see* ECF No. 120 at 2-4, firmly believe that the Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class members. *See id.* at 11.

### E. Plaintiff and her counsel have adequately represented the Settlement Class.

Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class members. *See id.* She stayed updated on the case and spoke with her counsel about it regularly. *Id.* She produced documents, responded to discovery requests, and sat for an over-six-hour deposition. *Id.* And she remained prepared to, and did, make all necessary decisions required of her in the best interests of Settlement Class members. *Id.*

Similarly, Plaintiff's counsel—who are experienced in complex litigation, have served as class counsel on numerous occasions, *see id.* at 2-6, and were appointed counsel for the class this Court previously certified in this matter, *see* ECF No. 92 at 38—zealously litigated on behalf of Plaintiff and Settlement Class members against sophisticated and experienced defense counsel. *See* ECF No. 120 at 1-11. And having done so, Plaintiff and her counsel obtained an excellent recovery for Settlement Class members.

### F. The Settlement treats class members equitably.

Rule 23(e)(2)(D) requires a court to confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that

courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

Here, all class members have the same legal claims. Correspondingly, the Settlement provides that each participating Settlement Class member will receive an equal portion of the Settlement Fund. Additionally, the release affects each Settlement Class member in the same way.

## III. The subject notice program is more than sufficient.

Pursuant to Rule 23(e) a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties agreed to a robust notice program—very similar to the notice program this Court previously approved, *see* ECF No. 114, but with the addition of a claim form—to be administered by a well-respected third-party claims administrator, KCC Class Action Services LLC ("KCC"). Through the notice program, KCC will use all reasonable efforts to provide direct mail notice to Settlement Class members.

To start, KCC will perform an initial reverse lookup process for the approximately 64,845 telephone numbers identified by Defendant as associated with potential Settlement Class members. Depending on the results of the initial reverse lookup process, and to ensure appropriate reach, KCC may perform a second reverse lookup process for certain of the approximately 64,845 telephone numbers identified by Defendant as associated with potential Settlement Class Members.

Upon receipt of contact information for potential Settlement Class members, KCC will run that information through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. KCC will then send direct mail notice by postcard, with a detachable claim form, to potential Settlement Class members, where possible. It will also issue publication notice.

Separately, KCC will establish a dedicated settlement website, through which Settlement Class members can review relevant documents filed with this Court, review the summary question-and-answer notice, and submit claims. In addition, KCC will establish a toll-free telephone number, through which Settlement Class members can request additional information, and have questions about the Settlement answered.

To submit a valid claim, a Settlement Class member will have to aver that he or she received one or more prerecorded voice calls from Defendant on his or her cellular telephone between September 1, 2019 and June 14, 2022, and that he or she is not a current or former accountholder with Defendant.

The ultimate goal of the notice program is to make it as convenient as possible for deserving Settlement Class members to learn of, and participate in, the Settlement. *See Williams*, 2019 WL 1450090, at *5 (approving similar notice plan in a TCPA class action); *James*, 2016 WL 6908118, at *2 (same).

The subject notice program, therefore, complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the Settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if a class member does not request exclusion; (4) the process regarding objections and exclusions, including the time and method for objecting or requesting exclusion,

and that settlement class members may make an appearance through counsel; (5) information regarding Plaintiff's incentive award and her counsel's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. *See* Fed. R. Civ. P. 23(c)(2)(B); Manual For Complex Litigation § 21.312; *see also Bonoan v. Adobe, Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes postcard notice, publication notice, a physical claim form, and the question-and-answer notice and online claim form, which will appear on the dedicated settlement website. To reach potential class members, KCC will perform reverse look-ups of available telephone numbers to identify persons who will receive direct mail notice. KCC will utilize established third-party vendors to obtain contact information for potential class members in a manner consistent with industry standard in wrong number TCPA class actions. KCC will also use publication notice in an effort to reach potential class members, consistent with the terms of the Agreement.").

In short, the subject notice program ensures that Settlement Class members' due process rights are amply protected. *See* Fed. R. Civ. P. 23(c)(2)(A).

**IV. This Court should set a final fairness hearing.**

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and an order of dismissal under Rule 23(e).

Here, Plaintiff requests that this Court set a date for a final fairness hearing, at this Court's

convenience, approximately four months after (and at least 105 days after) it preliminarily approves the Settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the order attached as Exhibit A—agreed to by the parties—certifying the Settlement Class for settlement purposes; preliminarily approving the Settlement as fair, reasonable, and adequate; appointing Plaintiff as the Settlement Class representative, and Plaintiff's counsel as Settlement Class counsel; approving and directing notice to Settlement Class members; and setting a final fairness hearing.

Dated: July 21, 2022

/s/ *Aaron D. Radbil*
Aaron D. Radbil
GREENWALD DAVIDSON RADBIL PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone: (512) 803-1578
aradbil@gdrlawfirm.com

Michael L. Greenwald
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Phone: (561) 826-5477
mgreenwald@gdrlawfirm.com

Jared D. Scott
ANDERSON & KARRENBERG, P.C.
50 West Broadway, Suite 700
Salt Lake City, Utah 84101
Phone: (801) 534-1700
jscott@aklawfirm.com

*Counsel for Ms. Wesley and class counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 21, 2022, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all counsel of record.

>                                                          */s/ Aaron D. Radbil*
>                                                          Aaron D. Radbil