Aaron D. Radbil (*pro hac vice*)
Michael L. Greenwald (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Phone: (561) 826-5477
aradbil@gdrlawfirm.com
mgreenwald@gdrlawfirm.com

Jared D. Scott (Bar No. 15066)
ANDERSON & KARRENBERG, P.C.
50 West Broadway, Suite 700
Salt Lake City, Utah 84101
Phone: (801) 534-1700
jscott@aklawfirm.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| BRANDI WESLEY, *on behalf of herself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SNAP FINANCE, LLC,<br><br>Defendant. | **PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Civil Action No. 2:20-cv-00148-RJS-JCB<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |
| SNAP FINANCE, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>DERRICK DEON JACKSON, JR., a/k/a DERRICK JOHNSON,<br><br>Third-Party Defendant. | |

**Introduction**

Following arm's-length negotiations with the assistance of a well-respected mediator, Brandi Wesley ("Plaintiff") and Snap Finance LLC ("Defendant") reached a settlement ("Settlement") that provides for an all-cash, non-reversionary fund ("Settlement Fund") in the amount of $5 million to resolve settlement class members' ("Settlement Class Members") claims against Defendant under the Telephone Consumer Protection Act ("TCPA").

Subsequently, "this Court preliminarily f[ound] that the settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the settlement class members." ECF No. 121 at 3. It also approved "the form and substance of the proposed notice of the class action settlement, which includes the postcard notice, the detachable claim form, and the question-and-answer notice to appear on the dedicated settlement website." *Id*. at 3-4. As well, this Court ordered that "a hearing should and will be held on February 7, 2023, after notice to the settlement class members, to confirm that the settlement is fair, reasonable, and adequate, and to determine whether a final order and judgment should be entered in this Lawsuit[.]" *Id*. at 1-2.

Follow dissemination of notice of the Settlement, 1,205 Settlement Class Members submitted approved claims for their *pro rata* share of the Settlement Fund. Accordingly, after deducting from the Settlement Fund all costs of notice and claims administration, attorneys' fees requested, costs and litigation expenses requested, and the incentive award requested (together "Expenses")—which are subject to this Court's approval—each Settlement Class Member who

submitted an approved claim will receive approximately $2,617, which is a tremendous result by any measure.[1]

No Settlement Class Member objected to the Settlement, and no Settlement Class Member excluded himself or herself from the Settlement. Considering this, Plaintiff respectfully requests that this Court finally approve the Settlement, and enter a final judgment and order.

Defendant does not oppose the relief Plaintiff now requests.

**Summary of the Settlement**

The parties agreed to resolve this matter on behalf of the settlement class ("Settlement Class") defined as:

> All persons throughout the United States (1) to whom Snap Finance, LLC placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a current or former Snap Finance, LLC accountholder, (3) in connection with which Snap Finance, LLC used an artificial or prerecorded voice, (4) from September 1, 2019 through June 14, 2022.

ECF No. 120-1 at 4.

To compensate Settlement Class Members, Defendant agreed to create the Settlement Fund—a non-reversionary, all-cash common fund in the amount of $5 million. *See id*. at 8. Each Settlement Class Member who submitted an approved claim is entitled to a *pro rata* share of the Settlement Fund after deducting the Expenses. *See id*. at 8-9. Any Settlement Class Member who wished to object to the Settlement could have submitted an objection, *see id*. at 10-11—no Settlement Class Member did. And any Settlement Class Member who wished to exclude himself or herself from the Settlement could have submitted a request for exclusion, *see id*. at 8-9—no Settlement Class Member did.

---

[1] This figure assumes an award of the requested attorneys' fees, costs and litigation expenses, and incentive payment, *see* ECF No. 124, and may either increase slightly if duplicate or fraudulent claims are later identified, or decrease slightly if this Court permits potential later-filed claims.

Upon this Court's entry of a final judgment, Plaintiff and each Settlement Class Member who submitted an approved claim will receive approximately $2,617, and each Settlement Class Member will release and forever discharge claims they have against Defendant under the TCPA.

**Claims Administration**

KCC Class Action Services, LLC ("KCC")—the claims administration company this Court approved, *see* ECF No. 121 at 4—delivered notice of the Settlement to potential Settlement Class Members. The resulting claims, lack of objections, and lack of exclusions, demonstrate not only the effectiveness of the notice, but also Settlement Class Members' satisfaction with the Settlement.

*Direct Mail Notice*: KCC caused postcard notices with detachable claim forms to be mailed to potential Settlement Class Members after performing reverse lookup processes for the telephone numbers identified by Defendant as associated with potential Settlement Class Members.[2] *See* Declaration of KCC, ¶¶ 4-13, attached as Exhibit A.

*Settlement Website*: KCC established and maintains a dedicated settlement website—http://www.snaptcpasettlement.com—which includes information pertinent to Settlement Class Members as well as answers to frequently asked questions. *See id*., ¶¶ 14-16. The settlement website was made live on October 28, 2022.

*Toll-Free Hotline*: KCC established and maintains a toll-free telephone number—(844) 525-0158—for Settlement Class Members to obtain information about the Settlement. *See id*., ¶ 17. The toll-free telephone number was activated on October 28, 2022. *See id*., ¶ 18.

*Claims*: 1,205 Settlement Class Members submitted approved claims. *See id*., ¶ 20.

*Objections*: 0 Settlement Class Members objected to the Settlement. *See id*., ¶¶ 25-27.

---

[2] Defendant believes there are substantially fewer Settlement Class Members than the number of unique cellular telephone numbers it identified. *See* ECF No. 120-1 at 4.

*Exclusions*: 0 Settlement Class Members excluded themselves from the Settlement. *See id.*, ¶¶ 23-24.

*Class Action Fairness Act Notice*: Defendant served the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. No government official, state or federal, objected to or raised an issue regarding the Settlement. *See id.*, ¶ 27.

## Argument

### I. This Court's decision to certify the Settlement Class remains sound.

This Court previously found "that this action satisfied the applicable prerequisites for class action treatment under Rule 23[.]" ECF No. 121 at 2-3. Nothing has since changed to warrant a departure from this Court's reasoning.

### II. The Settlement, which results in payments of over $2,600 to Settlement Class Members who submitted an approved claim, is fair, reasonable, and adequate under Rule 23(c).

The Tenth Circuit identified four factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representative and class counsel have adequately represented settlement class members, and that the settlement treats settlement class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the Settlement is fundamentally fair, reasonable, and adequate.

**A. The Settlement was fairly and honestly negotiated.**

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." *Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *5 (D.N.M. Apr. 9, 2021) (citing 2 Mclaughlin On Class Actions § 6:7 (8th ed. 2011)); *see also Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Milliron v. T-Mobile USA, Inc.*, No. CIV.A. 08-4149 (JLL), 2009 WL 3345762, at *5 (D.N.J. Sept. 10, 2009), *as amended* (Sept. 14, 2009), *aff'd*, 423 F. App'x 131 (3d Cir. 2011) ("[T]he participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

Here, the parties reached an agreement to resolve this matter only after mediating Plaintiff's claims with the Hon. Steven M. Gold (Ret.). Noteworthy, Judge Gold served for twenty-eight years as a United States magistrate judge for the Eastern District of New York, including nine years as the court's chief magistrate judge. And during his nearly three decades as a federal

magistrate judge, Judge Gold presided over thousands of settlement conferences, including those in connection with consumer class actions. *See* https://www.jamsadr.com/gold/ (last visited Dec. 27, 2022). Accordingly, the Settlement is not the product of collusion, but rather the result of fair, honest, arm's-length negotiations facilitated by an experienced mediator.

**B. Questions of law and fact existed, placing the outcome of this matter in doubt.**

Disputed questions of law and fact weigh "in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1138 (D. Colo. 2009); *see also McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) ("The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

Here, while the parties completed class-related discovery, merits discovery did not begin. *See* ECF No. 36. So without more, issues of fact necessarily remained. No matter, Defendant expressed an intent to move for summary judgment following merits discovery. And, in the event this matter proceeded to trial, Defendant outlined its plan to conduct months-long examinations to challenge each Settlement Class Member's claims.

As well, Defendant maintained it would ultimately decertify the class this Court previously certified over its objection. And should it not succeed there, Defendant maintained it would prevail on appeal in connection with its contention that this Court should not have certified the class it did.

At bottom, questions of law and fact existed, which placed the ultimate outcome of this matter in doubt.

### C. The value of an immediate recovery outweighed the mere possibility of future relief after protracted and expensive litigation.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Newberg On Class Actions, § 11:50. This is, in part, because "the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial[.]" *Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969). And this is particularly true in the context of a class action. *See Wal-Mart Stores, Inc.*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits[.]").

Here, the Settlement Fund is non-reversionary, all-cash, and amounts to $5 million. From that fund, each Settlement Class Member who submitted an approved claim will receive approximately $2,617—a phenomenal result. This greatly surpasses comparable figures in other approved TCPA class action settlements. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014)

(claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101). And it is in line with comparable figures in TCPA class actions in which Plaintiff's counsel recently served as class counsel. *See, e.g.*, *Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS, ECF No. 86 at 11 (N.D. Cal. Jan. 14, 2021) (approximately $2,800 per claimant); *Davis v. Mindshare Ventures LLC, et. al.*, No. 4:19-cv-01961 (S.D. Tex. Sept. 1. 2020) (approximately $2,282 per claimant).

Therefore significant is that the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

What's more, the Settlement provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have interest in individually controlling the prosecution of separate actions). Accordingly, because of the Settlement, Settlement Class Members will receive significant recoveries they otherwise would have likely never pursued on their own.

In the end, the Settlement constitutes an extremely favorable result for Settlement Class Members, and outweighs the mere possibility of future relief after protracted and expensive

litigation. *Accord Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation.").

**D. The judgment of the parties is that the Settlement is fair and reasonable.**

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 313 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. 'The trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel'").

Here, Plaintiff's counsel, who are highly experienced in class action litigation, particularly in cases under the TCPA, *see* ECF No. 120 at 2-4, firmly believe the Settlement is fair, reasonable, adequate, and in the best interests of Settlement Class Members. *See id*. at 11.

And Plaintiff's counsel's judgment is buttressed by the fact that no Settlement Class Members objected to the Settlement, and no Settlement Class Members excluded themselves from the Settlement. *See Cisneros v. EP Wrap-It Insulation, LLC*, No. CV 19-500 GBW/GJF, 2022 WL 2304146, at *11 (D.N.M. June 27, 2022) ("Based on Class Counsel's experience and the lack of any objections to the proposed settlement, the Court is persuaded by Class Counsel's judgment that the settlement is fair and reasonable[.]"); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691–92 (D. Colo. 2014) ("The reaction of the class members further supports the conclusion that the Settlement Agreement is fair. *See In re Mego Financial Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Out of the approximately 300,000 notices sent to potential class members, only 13 putative class members opted out or expressed an intent to do so."); *see also In re Waste Mgmt.,*

*Inc. Sec. Litig.*, No. H-99-2183, 2002 WL 35644013, at *21 (S.D. Tex. May 10, 2002), *amended,* No. H-99-2183, 2003 WL 27380802 (S.D. Tex. July 31, 2003) ("Equally supportive of approving the settlement is that *no* Class Member has filed an objection to any term of the settlement. By not filing objections, Class Members have tacitly indicated their approval of the proposed settlement."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

### E. Plaintiff and her counsel more than adequately represented the Settlement Class.

Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members. *See* ECF No. 120 at 11. She stayed updated on the case and spoke with her counsel about it regularly. *Id*. She produced documents, responded to discovery requests, and sat for an over-six-hour deposition. *Id*. And she remained prepared to, and did, make all necessary decisions required of her in the best interests of Settlement Class Members. *Id*.

Similarly, Plaintiff's counsel—who are experienced in complex litigation, have served as class counsel on numerous occasions, *see id*. at 2-6, and were appointed counsel for the class this Court previously certified in this matter, *see* ECF No. 92 at 38—ardently litigated on behalf of Plaintiff and Settlement Class Members against sophisticated and experienced defense counsel. *See* ECF No. 120 at 1-11. And having done so, Plaintiff and her counsel obtained an excellent recovery for Settlement Class Members.

### F. The Settlement treats class members equitably.

Rule 23(e)(2)(D) requires a court to confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes

appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

Here, all Settlement Class Members have the same legal claim. Correspondingly, the Settlement provides that each Settlement Class Member who submitted an approved claims will receive an equal portion of the Settlement Fund. Additionally, the release affects each Settlement Class Member in the same way.

**III. The notice program complied with Rule 23 and due process.**

In line with this Court's direction, KCC used all reasonable efforts to provide direct mail notice to potential Settlement Class Members. Specifically, KCC performed reverse lookup processes for telephone numbers identified by Defendant as associated with potential Settlement Class Members. *See* Exhibit A, ¶¶ 4-9. Upon receipt of contact information for potential Settlement Class Members, KCC ran that information through the National Change of Address system, which updated addresses for people who moved during the previous four years and filed a change of address with the U.S. Postal Service. *See id*., ¶ 10. KCC then sent direct mail notice by postcard, with a detachable claim form, to potential Settlement Class Members. *See id*., ¶¶ 11-13.

Separately, KCC established a dedicated settlement website, through which Settlement Class Members could review relevant documents filed with this Court, review the question-and-answer notice, and submit claims. *See id*. ¶¶ 14-16. In addition, KCC established a toll-free telephone number, through which Settlement Class Members could request additional information, and have questions about the Settlement answered. *See id*. ¶¶ 17-18.

As a result of this robust notice program, 1,205 Settlement Class Members submitted approved claims. No Settlement Class Members objected to the Settlement. And no Settlement Class Members excluded themselves from the Settlement.

The notice program, which is industry standard in TCPA class actions like this matter, complied with Rule 23 and due process. *See Bonoan v. Adobe, Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes postcard notice, publication notice, a physical claim form, and the question-and-answer notice and online claim form, which will appear on the dedicated settlement website. To reach potential class members, KCC will perform reverse look-ups of available telephone numbers to identify persons who will receive direct mail notice. KCC will utilize established third-party vendors to obtain contact information for potential class members in a manner consistent with industry standard in wrong number TCPA class actions. KCC will also use publication notice in an effort to reach potential class members, consistent with the terms of the Agreement."). It also ensured that Settlement Class Members' due process rights were amply protected. *See* Fed. R. Civ. P. 23(c)(2)(A).

**Conclusion**

Plaintiff respectfully requests, with the agreement of Defendant, that this Court enter the accompanying proposed final order and judgment, attached as Exhibit B.

Dated: January 6, 2023                    */s/ Aaron D. Radbil*
                                          Aaron D. Radbil
                                          Michael L. Greenwald
                                          GREENWALD DAVIDSON RADBIL
                                          PLLC
                                          5550 Glades Road, Suite 500
                                          Boca Raton, Florida 33431
                                          Phone: (561) 826-5477
                                          aradbil@gdrlawfirm.com
                                          mgreenwald@gdrlawfirm.com

                                          Jared D. Scott
                                          ANDERSON & KARRENBERG, P.C.
                                          50 West Broadway, Suite 700
                                          Salt Lake City, Utah 84101
                                          Phone: (801) 534-1700
                                          jscott@aklawfirm.com

                                          *Counsel for Ms. Wesley and Class Counsel*

## CERTIFICATE OF SERVICE

I certify that on January 6, 2023, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will provide notice to all counsel of record.

                                          */s/ Aaron D. Radbil*
                                          Aaron D. Radbil